STATE OF HAWAII, Plaintiff-Appellee, *v.* JOHN KALANI LINCOLN, Defendant-Appellant

NO. 7912

(CRIMINAL NO. 5720)

MARCH 18, 1982

HAYASHI, C.J., BURNS, J., AND CIRCUIT JUDGE KATO
IN PLACE OF ASSOCIATE JUDGE PADGETT, RECUSED

OPINION OF THE COURT BY BURNS, J.

Defendant John Kalani Lincoln appeals the jury verdict finding him guilty of two counts of murder and one count of attempted murder. We affirm.

On May 4, 1978, Anthony Kekona, Jr., and Patrick Hawkins went to the Kaleialoha Condominium in Honokowai, Maui, where, with a .22-caliber semi-automatic gun which Hawkins had previously obtained for him, Kekona shot and killed Paul Warford and David Blue and shot and wounded Harriet Savage. Hawkins was apprehended almost immediately and Kekona was arrested some days later on Oahu.

Kekona pled guilty to two counts of murder for which he was sentenced to life imprisonment with possibility of parole and one

count of attempted murder for which he was sentenced to 20 years' imprisonment.

In July 1979, on the day after he was sentenced, Kekona informed the police that he had been hired by John K. Lincoln to kill Warford, Blue, and Savage.

On or about August 22, 1979, the police obtained court authorization for a wiretap upon Lincoln's home phone. On August 23, 1979, the police advised the media that Kekona had escaped when in fact he had not. During the time when Kekona was an "escapee," he engaged in phone conversations with Lincoln in an effort to cause Lincoln to incriminate himself and others.

On September 27, 1979, Kekona was indicted for escape in the second degree. All persons having anything to do with the issuance of the indictment knew that in fact Kekona had not escaped and that the indictment was phony.

On October 25, 1979, a grand jury different from the one which "indicted" Kekona indicted Lincoln for two counts "of Murder for Hire in violation of Sections 707-701 and 706-606 of the Hawaii Revised Statutes" and one count "of Attempted Murder in violation of Sections 705-500 and 707-701 of the Hawaii Revised Statutes."

On April 12, 1980, a jury found Lincoln guilty of two counts of murder and one count of attempted murder. He was given the same sentences as Kekona.

## I.

Lincoln contends that the circuit court should have granted his Rule 12(b), Hawaii Rules of Penal Procedure (HRPP), motion to quash or dismiss his indictment because of the following instances of alleged prosecutorial misconduct:

A. Allegedly misinforming Judge Huddy about the necessity of a wiretap.

B. Use of electronic surveillance on Lincoln's conversations with his wife and his attorney allegedly for longer than necessary.

C. Causing a grand jury to return a phony indictment.

D. Alleged unauthorized and forced entries into Lincoln's house by the police.

E. Allegedly causing Kekona to threaten Lincoln and his wife over the telephone in violation of state and federal laws.

F. Allegedly making threats to and causing others to threaten Lincoln, his wife, and friends.

G. Not disclosing to the grand jury Kekona's prior criminal record.

H. Not telling the grand jury about the electronic surveillance on Lincoln, about Kekona's fake escape, and about the attempts to entrap Lincoln.

I. Allegedly misinforming the grand jury that the telephone company's records verify Kekona's statement about the telephone contacts between Kekona and Lincoln.

J. Alleged punitive segregation and punishing conditions to which Lincoln was being subjected while in pretrial confinement.

K. The police allegedly telling Lincoln and his wife that he was being "misled, misinformed, ill-advised and misrepresented" by his attorney.

### SUBSECTIONS A & B

Lincoln complains that the prosecution (1) misinformed the judge about the necessity for a wiretap and (2) intercepted, overheard, and recorded privileged conversations between Lincoln and his wife and Lincoln and his attorney. Lincoln is not complaining of the use of wiretap evidence; rather, he is complaining that the application for the wiretap and the failure to use appropriate intercept minimization procedures constitute prosecutorial misconduct. Although strict construction of wiretap provisions is necessary, *United States v. Giordano,* 416 U.S. 505 (1974), we do not find a violation of procedures here and, *a fortiori,* we find no prosecutorial misconduct.

Our wiretap statute, Hawaii Revised Statutes (HRS) § 803-46(a)(4) (1978), requires a "full and complete statement of facts as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Lincoln argues that the State failed to inform the judge about its suspicions of the identity of persons believed to have hired Lincoln. However, Detective Gary Danley testified that he did inform Judge Huddy of his suspicions.

Lincoln also argues that the State violated HRS § 803-46 (1978) by not following proper minimization procedures. Again, the record

does not support Lincoln's allegation. Detective Danley testified that as soon as conversations between Lincoln and his wife or Lincoln and his attorney were identified as such, the intercepts were terminated.

Lincoln agrees and the record shows that even though he did not file a motion to suppress it, the evidence obtained from the electronic surveillance of his phone was not used at his trial.[1] Since the record shows no violation of HRS § 803-46 (1978) and no prejudice to Lincoln, we find no error.

### SUBSECTION C

Lincoln contends that the lower court erred in not dismissing the indictment or awarding him some other benefit because the prosecution caused a grand jury other than the grand jury which indicted him to return a phony indictment against Kekona. We disagree. The case before us involves the indictment and conviction of Lincoln, not the phony indictment of Kekona. Lincoln has not alleged or demonstrated that his rights have been substantially prejudiced by the phony indictment of Kekona.

### SUBSECTIONS D, E, & F

Lincoln complains that the prosecutor and the police were involved in illegal break-ins at his house and made threats to Lincoln, his wife, and friends. Although the State denied any responsibility for the threats and alleged break-ins, Lincoln claims the denials to be implausible, "considering the strategy which was described in [Detective] Danley's affidavit that was attached to the wiretap application."[2] Acting as the fact-finder, the lower court resolved the

---

[1] However, evidence obtained from the tap of Kekona's phone, which was conducted with Kekona's consent, was introduced, and on appeal Lincoln does not cite the introduction of that evidence as error.

[2] Lincoln is apparently referring to Danley's plan to have Kekona inform Lincoln that he (1) wants payment of the unpaid balance of the "contract" price; (2) wants an additional sum of money to compensate him for time spent in jail; and (3) that if he does not get the money, he will report Lincoln's involvement in the murders to the police.

credibility issue in favor of the State. The lower court's finding of fact is supported by substantial evidence, is not against the clear weight of the evidence, and we have no definite and firm conviction that a mistake has been made. Consequently, the findings are not clearly erroneous and must be affirmed. 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 374 (1969); 9 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil,* § 2585 (1971); *DeFries v. Association of Owners,* 57 Haw. 296, 555 P.2d 855 (1976).

### SUBSECTIONS G & H

Lincoln contends that the fact that the prosecutor did not tell the grand jury which indicted him about (1) Kekona's extensive record of convictions, (2) the electronic surveillance on Lincoln, (3) Kekona'a fake escape, and (4) Kekona's attempts to cause Lincoln to provide inculpatory information required the lower court to quash the indictment. We disagree. The above information is not "clearly exculpatory"; therefore, it was not required to be presented to the grand jury. *State v. O'Daniel,* 62 Haw. 518, 616 P.2d 1383 (1980); *State v. Bell,* 60 Haw. 241, 589 P.2d 517 (1978).

### SUBSECTION I

Lincoln contends that Detective Danley misinformed the grand jury when he testified as follows:

Q. And did you have occasion to check the bills for both the phone number 261-3979 and a phone number at the residence that Anthony Kekona was living at, his father's residence?[3]

A. I did have occasion to look into the toll charges on those phone numbers that you mentioned.

Q. And what did this check reveal?

A. It verified what we were informed by Anthony Kekona as to the date and times of the calls received and made.

(Footnote added.)

---

[3] 261-3979 was the number of Lincoln's home phone in Kailua, Oahu. Kekona was living at his father's residence in Lahaina, Maui.

Lincoln argues that "subsequent testimony at the trial demonstrated that the toll records[4] are in no way consistent with Kekona's version of the events." (Footnote added.) The prime error in Lincoln's argument is that the information which Kekona gave to the police prior to the grand jury hearing is not necessarily the same as his testimony at trial and the validity of Detective Danley's grand jury testimony is properly tested against the former, not the latter. The second error is that at least in some ways the toll records are consistent with Kekona's version of the events.

## SUBSECTION J

Lincoln alleges that (1) he was held at the Lahaina Police Station in a temporary holding cell for approximately three-and-one-half weeks; (2) for twenty-one days he received no linen change and no change of clothes; (3) food and bathing were irregular; (4) he was allowed outside on only three occasions and was not permitted to exercise; (5) there were constant interruptions and/or tampering with his mail and telephone calls; (6) while in segregation, every request and communication had to go through Detective Danley and he was in Detective Danley's virtual control; (7) upon transfer to Maui Correctional Center (MCC), he remained segregated and could exercise only with leg irons; and (8) at MCC, Kekona was permitted to approach within short distances in a threatening manner.

The record contains evidence which contradicts some of Lincoln's allegations and explains the rest. The record, therefore, validates the lower court's conclusion that Lincoln's constitutional rights were not violated by the pretrial confinement conditions. Moreover, even if the allegations had been proven, the proper remedy would

---

[4] The toll records show the following calls:
4-22-78   Lincoln's number to Kekona's number
4-26-78   Kekona's number to Lincoln's number
4-27-78   Kekona's number to Lincoln's number
5-3-78   Lincoln's number to Kekona's number
5-3-78   Lincoln's number to Kekona's number
5-4-78   Lincoln's number to Kekona's number
5-5-78   Kaanapali number (collect) to Lincoln's number.

have been by way of a civil rights action,[5] *Preiser v. Rodriguez,* 411 U.S. 475, 499-500 (1973); *Wilwording v. Swenson,* 404 U.S. 249 (1971), for relief other than declaratory and injunctive, *Murphy v. Hunt,* 50 USLW 4264 (3/2/82), not by a dismissal of the indictment.[6]

### SUBSECTION K

Lincoln also contends that there was prosecutorial misconduct in that the police allegedly told Lincoln and his wife that he was being "misled, misinformed, ill-advised and misrepresented" by his attorney, thus interfering with Lincoln's right to counsel in violation of the sixth amendment of the United States Constitution and Article I, Section 11, of the Hawaii Constitution.

The record contains evidence which validates the lower court's conclusion that the police did not do what Lincoln contends they did.

Moreover, even assuming that a sixth amendment violation did occur as alleged, dismissal of the indictment is not the appropriate remedy, absent a showing of prejudice, or a substantial threat thereof. *United States v. Morrison,* 449 U.S. 361 (1981). Since Lincoln has not alleged or demonstrated prejudice or a substantial threat thereof, he has not entitled himself to a dismissal of the indictment. *Id.* at 363.

### II.

Lincoln contends that the circuit court erred in denying his Rule 21, HRPP, motions for change of venue or to take steps, other than a change of venue, to cure the possible effects of pretrial publicity. We disagree for the following reasons:

First, in his memo in support of his motion for change of venue, defense counsel stated that Lincoln was "unwilling to forego his right to a speedy trial to await dissipation of the extensive publicity surrounding this case."

---

[5] The propriety of using the writ of habeas corpus, rather than a civil rights action, to obtain review of confinement conditions, as distinct from the fact or the length of confinement itself, is still an open question. *Bell v. Wolfish,* 441 U.S. 520 (1979) at 527.

[6] Generally, "remedies should be tailored to the injury suffered from a constitutional violation. . . ." *United States v. Morrison,* 449 U.S. 361 (1981).

Second, the trial court did take other appropriate measures to insure a fair trial as required by *State v. Keliiholokai,* 58 Haw. 356, 569 P.2d 891 (1977). The procedure used by the court was as follows:

[THE COURT]: I think I've already somewhat discussed this matter with counsel in chambers, but I would expect to call the entire panel in and go through the preliminary questions of whether or not they are qualified and whether they wish to be excused, general matters.

\* \* \*

Thereafter I intend to discuss or try to question them as to whether or not any one of them have heard, read or discussed this case previous to today, and take the names of those panel members who fit into this category.

Also, at the request — suggestion of counsel, I intend to question them as to whether or not they have any close relationship to the defendant or to the victims of the killings down at Honokowai, Paul Warford, Harriet Savage and David Blue, as well as Anthony Kekona, Patrick Hawkins and perhaps the police, and take names of those parties who indicate that they do have this kind of relationship.

Once that is done, I expect to have the jurors leave the courtroom and have them — those have indicated that they have some familiarity with the witnesses that I've mentioned or the parties that I've mentioned or the case itself, individual[ly] to be *voir dired* by the attorneys involved.

Third, in compliance with Rule 24(b), HRPP, each side was allowed twelve peremptory challenges. When it came time for defense counsel to use his twelfth peremptory, he stated:

MR. SEITZ: Judge, we're perfectly satisfied with the jury as it's comprised. We'll waive the final peremptory challenge.

Fourth, in any event, it was Lincoln's burden to satisfy the court that so great a prejudice against him existed in the Second Circuit that he could not obtain a fair and impartial trial therein. *State v. Moyd,* 1 Haw. App. 439, 619 P.2d 1107 (1980). The standard of review of the trial court's denial of Lincoln's motion for change of venue is that the decision of the trial court shall not be disturbed on appeal unless the record indicates an abuse of discretion. *Id.* We find no such abuse of discretion.

## III.

Lincoln contends that the circuit court erred in denying his Rule 12(b), HRPP, motion to suppress oral statements which he allegedly had made.

When Lincoln was arrested on October 30, 1979, the police properly advised him of his rights and he specifically refused to waive any of them.

However, on November 2, 1979, while being transported by the police from the arraignment hearing in Wailuku to his place of confinement in Lahaina, Lincoln allegedly stated to Detective Gary Danley, one of the two officers in the car: "Gary, if I go down, tell the wahine it wasn't meant for her."

On November 8, 1979, while being transported by the police from a bail hearing in Wailuku to his place of confinement in Lahaina, Lincoln allegedly stated to Detective Danley, one of the two officers in the car:

LINCOLN: "Gary, do me one favor."

OFFICER: "Sure."

LINCOLN: "Win, lose, or draw, tell the wahine I didn't have nothing with her — I didn't have nothing to do with her getting shot or the other guy getting killed. My trip was strictly with Warford."

The uncontradicted evidence in the record is that Lincoln made the statements and that the statements were unsolicited, spontaneous, and voluntary, and not the product of interrogation. Such statements, even though uttered while in custody and after Lincoln had specifically refused to waive any of his constitutional rights, are not barred by the applicable federal and state constitutions. *Rhode Island v. Innis,* 446 U.S. 291 (1980); *State v. Amorin,* 61 Haw. 356, 604 P.2d 45 (1979). No one has a constitutional right to erase unsolicited, spontaneous, and voluntary incriminating statements. *Id.*

## IV.

Lincoln contends that the circuit court erred in dismissing a prospective juror for cause because of her expressed reluctance to believe a witness who has a criminal record and who is an admitted murderer. We disagree for two reasons. First, the prospective juror

clearly indicated that she would be prejudiced and biased and not fair and impartial when judging the credibility of such a witness. Second, when the judge decided to excuse the prospective juror, defense counsel did not object.

## V.

Lincoln contends that the circuit court erred in preventing his counsel from questioning prospective jurors as to the effect, if any, they would give to the accused's lack of any "motive" for the crimes charged. We disagree.

In deciding this issue, we apply the following standard: "Rule 24(a) [HRPP] leaves to the court's discretion the regulation of *voir dire* examination so as to keep the questioning by counsel within reasonable bounds and to confine it to assisting in the impaneling of an impartial jury." *State v. Altergott,* 57 Haw. 492, 499, 559 P.2d 728, 733 (1977).

"[A]bsent abuse of his [or her] broad discretion, and a showing that the rights of the accused have been substantially prejudiced thereby, the trial judge's rulings as to the scope and content of *voir dire* will not be disturbed on appeal." *Id.* at 500 quoting *United States v. Robinson,* 475 F.2d 376, 380 (D.C. Cir. 1973); *State v. Le Vasseur,* 1 Haw. App. 19, 613 P.2d 1328 (1980).

Lincoln further contends that the court erred in refusing to give his proposed instruction no. 4:

> Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish guilt. Absence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled.

Again, we disagree. The issue is not whether the refused instruction is a correct statement. The issue is whether, when they are read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. *State v. Tyrrell,* 60 Haw. 17, 586 P.2d 1028 (1978); *State v. Apao,* 59 Haw. 625, 586 P.2d 250 (1978); *State v. Napeahi,* 57 Haw. 365, 556 P.2d 569 (1976). We hold that they are not.

## VI.

Lincoln contends that the circuit court erred when it denied his Rule 29(a), HRPP, motion for judgment of acquittal at the close of the prosecution's evidence because a guilty verdict may not be based upon the uncorroborated testimony of an accomplice. We disagree for two reasons. First, corroboration is not required. *State v. Carvelo,* 45 Haw. 16, 42 (1961); *Rep. Haw. v. Edwards,* 11 Haw. 571 (1898). Second, even if there were such a requirement, Lincoln's statements in evidence constitute corroboration.

## VII.

Lincoln contends that the circuit court erred in refusing his proposed instruction no. 1:

If you find that a witness attempted to or did actually suppress or destroy evidence, such acts or attempts may be considered by you as a circumstance bearing adversely upon the credibility of the witness.

The facts upon which Lincoln bases his request for the instruction are as follows:

On December 12, 1979, defense counsel filed and delivered to the prosecutor a Written Request for Disclosure under Rules 12.1 and 16,[7] HRPP. Sometime after Lincoln made the statements referred to in Section III, *supra,* to Detective Danley, Danley wrote notes of his recollection of what was said. He used the notes to

---

[7] Rule 16.   DISCOVERY.

\*   \*   \*

(b) Disclosure by the prosecution.

(1) *Disclosure Upon Written Request of Matters Within Prosecution's Possession.*   Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:

(i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;

\*   \*   \*

prepare his February 13, 1980, typewritten report and then he destroyed the notes. Defense counsel was provided with a copy of the typewritten report.

The detective's notes were not "evidence"; consequently, the requested instruction is unsupported by the evidence, *State v. Maluia*, 56 Haw. 428, 539 P.2d 1200 (1975), and the trial judge did not err when he refused to give it. *State v. Le Vasseur, supra*, 1 Haw. App. 19, 613 P.2d 1328 (1980).

## VIII.

Lincoln contends that the trial court erred in refusing his proposed instruction no. 3:

Evidence that on some former occasion, a witness made a statement or statements that were inconsistent with his testimony in this trial, may be considered by you not only for the purpose of testing the credibility of the witness, but also as evidence of the truth of the facts as stated by the witness on such former occasion.

The court's instruction was as follows:

"Instruction No. 21: A witness may be impeached by proof that on some former occasion, he made a statement or statements that are contradictory of his testimony here. Evidence of any prior contradictory statement is not received for the purpose of proving the truth of what is then said but only for the purpose of testing the credibility of the witness. You are to consider such evidence only for that purpose, and you are the exclusive judges of the effect of this evidence on the witness's credibility.

If this case had been tried after January 1, 1981, then perhaps Lincoln's contention would have merit. Rule 802.1(1), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1976, as amended). Since this case was tried prior to January 1, 1981, there is no error in the court's instruction. *Kekua v. Kaiser Foundation Hospital*, 61 Haw. 208, 601 P.2d 364 (1979); *State v. Napeahi*, 57 Haw. 365, 556 P.2d 569 (1976); HRS § 621-23 (1976).

## IX.

Lincoln contends that the circuit court erred in charging him with "Murder for Hire" and in instructing the jury that if they did

not find him guilty of murder for hire, they could find him guilty of the lesser included offense of murder.

In his motion to quash the indictment and/or dismiss the charges, Lincoln objected to the language charging him with "Murder for Hire," arguing that "for Hire" was not an element of the offense, but an aggravated sentencing provision.

We agree that murder is not a lesser included offense of murder for hire. HRS § 701-102 (1976) provides that no behavior constitutes an offense unless made so by the Hawaii Penal Code or another statute. There is no offense of "Murder for Hire." A defendant may be convicted only of an offense included in an offense charged in the indictment or the information. HRS § 701-109(4); *State v. Woicek*, 63 Haw. 548, 632 P.2d 654 (1981); *State v. Feliciano*, 62 Haw. 637, 618 P.2d 306 (1980); *State v. Kupau*, 63 Haw. 1, 620 P.2d 250 (1980).

However, the Hawaii Supreme Court in *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), held that where an indictment states all the essential elements of the crime of murder, it is better "to include in the indictment the allegations, which if proved, would result in application of a statute enhancing the penalty for the crime committed." *Id.* at 636 (footnote omitted). Here, the State did just that, although somewhat inartfully. The indictment gave notice to Lincoln prior to trial that if he were convicted of the Class A felony of murder, and if the jury found that he did it "for Hire," he could, under HRS § 706-606 (1976), receive an enhanced sentence.

Lincoln argues that if the murder charge is correct and the "for Hire" is mere enhancement, then jury instruction no. 28 was reversible error. The instruction complained of is as follows:

"Instruction No. 28: Under our law, if a defendant is charged with an offense and the jury is not satisfied, beyond a reasonable doubt, that he is guilty of the offense charged, the defendant may be convicted of a lesser offense which is included within the offense with which he has been charged, provided, of course, that the evidence in the case convinces the jury beyond a reasonable doubt that he is guilty of such lesser-included offense.

"In this case, the lesser-included offense is Murder. A person commits the criminal offense of Murder if he is an accomplice of another person in the commission of an offense if, with the intention of promoting or facilitating the commission of the offense, he solicits the other person to commit it.

"In order to convict the Defendant of the lesser-included offense of Murder, the State must prove each element of the crime charged beyond a reasonable doubt. These elements are, as to Count One, wherein the victim is Paul Roger Warford: 1) That Defendant did solicit Anthony K. Kekona, Jr. to intentionally or knowingly cause the death of Paul Roger Warford; 2) That the Defendant did so with the intention of promoting or facilitating the commission of the offense of murder. As to Count 2, wherein the victim is David Blue: 1) That Defendant did solicit Anthony K. Kekona, Jr. to intentionally or knowingly cause the death of David Blue."

Lincoln argues that by offering two possible guilty verdicts — "Murder" and "Murder for Hire" — the judge confused the jury and invited compromise. We disagree.

As stated previously in Section V, *supra,* the question on review of instructions is whether, when they are read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Even though the court erred in referring to murder as a lesser included offense, we do not find that the instructions given, when considered as a whole, are prejudicially insufficient, erroneous, inconsistent, or misleading.

As to each of the two alleged murders, there were three questions for the jury to answer: (1) Is Lincoln not guilty? (2) Is Lincoln guilty of murder? (3) Did Lincoln commit the murder for hire? Here, the three questions were given to the jury, but they were put in a (1), (3), (2) sequence. Even though the better way of giving the instructions would have been to first give an instruction on murder and then an instruction on the enhancement of sentence provision, the fact that the instructions were given in a different sequence does not constitute error.

Admittedly, question (3) was misidentified as involving an "offense," and question (2) was misidentified as involving a "lesser included offense." The essence of Lincoln's argument seems to be that the mislabeling of the enhancement of sentence provision as an offense and of the offense of murder as a lesser included offense is per se prejudicial error or that it was prejudicial error in this case. We disagree.

The invitation to compromise is always present when, as was true in this case, the jury is given more choices than two with respect to

one count.

Lincoln contends, however, that the jury found that the attempted murder was for hire and that the finding was inconsistent with its finding that the murders were not for hire, thus showing the jury's confusion. Lincoln's argument fails because his premise is erroneous. The jury did not find that the attempted murder was for hire. Count Three charges Lincoln with "committing the offense of Attempted Murder. . ." and no "for Hire" enhancement provision is included. Instruction no. 27 states that Lincoln is charged with "Attempted Murder." The jury verdict form gave the jury only two choices as to Count Three:

*VERDICT*

WE, THE JURY in the above-entitled cause, find DEFENDANT JOHN KALANI LINCOLN as follows:

\* \* \*

as to Count Three (re: HARRIET "HAT" SAVAGE): (Please check one blank)

\_\_\_\_\_ NOT GUILTY

X\_\_\_\_ GUILTY AS CHARGED

DATED at Wailuku, Hawaii, this 12th day of April, 1980.

Thus, "Guilty As Charged" as to Count Three means guilty of attempted murder and not that Lincoln is guilty of attempted murder for hire. There is no inconsistency in the verdicts.

### X.

Lincoln contends that the circuit court erred when it denied his Rule 33, HRPP, motion for a new trial, which was based on his contention that during his closing argument, the prosecutor impermissibly commented upon Lincoln's failure to testify.

In his initial closing argument to the jury, the prosecutor did not mention or allude to the fact that Lincoln did not testify. That fact was first mentioned by defense counsel in his closing argument.

[MR. SEITZ]: So where is the case? What you have is this theory full of holes. A lot of witnesses are not here. A lot of

tangible physical evidence is not here — plane tickets, money, witnesses, napkin, photographs, notes of alleged statements.

But most significantly, where's the motive? Where's the reason? Why is John Lincoln involved? What did John Lincoln gain from this? What was his pay-off? Who threatened him? Who paid him? Who approached him? Who hired him? Who was this big fish that they were after? Nobody knows. There's no reason offered to explain to you why John Lincoln would do anything of this kind. Tony Kekona did it for money, for fame. He wanted to be the hit man on Maui. Why did John Lincoln do anything that he's alleged to have done? Without the answer to that question, it seems to me you have a pretty big void — a pretty big hole and a very large gap in the Prosecutor's case.

\* \* \* \* \*

[MR. SEITZ]: Through all this, who is John Kalani Lincoln? He hasn't testified for various technical and other reasons on my advice, which —

MR. YAMAMOTO: Objection, Your Honor. I think Counsel is well aware of that —

THE COURT: I think the Court will instruct the jury regarding the failure of Defendant to testify. I don't think Counsel can go ahead and make comments.

MR. SEITZ: Fine.

[THE COURT]: The Court will instruct you with respect to that. You should draw no inferences in the fact that Mr. Lincoln did not testify.

Then, during the prosecutor's rebuttal closing argument, the following exchanges occurred:

[MR. YAMAMOTO]: But we really don't know what happened. And there's only one person who can tell us.

\* \* \* Now, in that telephone call, there are only two parties involved, the caller and the person receiving. Kekona, being the person receiving the call, told us what the call was about; and there is only one other person who can testify with regard to that call.

\* \* \* Again, there is only one person who can tell you, in addition to Kekona, whether he, in fact, did fly from Honolulu to

Kaanapali on April 22, 1978.

MR. SEITZ: Judge, at this point, I'm going to have to object. * * *

THE COURT: All right, I think I'll sustain the objection.

* * * * *

[MR. YAMAMOTO]: Mr. Seitz has said, "Where's the motive? What was the payoff for Mr. Lincoln? Who hired him? Who paid him?" Mr. Kekona does not know. He was never told. Mr. Hawkins was never told. And the Court and Mr. Seitz have told you the Defendant need not testify. I suggest, ladies and gentlemen of the jury, that these questions with regard to the motive, the payoff, who hired him, and who paid him are being asked of the wrong persons.

MR. SEITZ: I think, again, I'm going to object, Your Honor. This is a very clear area where Mr. Yamamoto knows he cannot go into. We have no obligation to answer any questions. The prosecutor has the burden of answering all of the questions. And to imply that we have some burdens in this respect and we failed to fulfill these obligations is not only unfair, Mr. Yamamoto knows it's unethical to do so.

MR. YAMAMOTO: Your Honor, it seems —

THE COURT: I'll sustain the objection.

The court instructed the jury as follows:

"Instruction No. 11: You are not to draw any inference, whatever, from a defendant's failure to testify in this case or give any consideration to this fact in your deliberations. In other words, you must not hold against the defendant the fact that he has not testified in his own behalf; and such fact is not to be considered by you in any way in arriving at your verdict. The law raises no inference against the defendant by reason of his not offering himself as a witness because the burden of proof always rests upon the State to prove guilt. It is never the obligation of the defendant to prove that he is innocent.

Lincoln argues that the prosecutor "deliberately directed the jury to [his] silence and urged them to draw inferences of guilt therefrom."

The question on appeal is whether the remarks were improper

and, if so, whether their effect was harmful. *State v. Melear,* 63 Haw. 488, 630 P.2d 619 (1981); *State v. Padilla,* 57 Haw. 150, 552 P.2d 357 (1976); *Kaneshiro v. Belisario,* 51 Haw. 649, 466 P.2d 452 (1970).

Both the United States Constitution (fifth amendment) and the Hawaii Constitution (article 1, section 10) prohibit comment by the prosecutor to the jury that the defendant's silence is evidence of guilt. *State v. Melear, supra; State v. Padilla, supra.*

However, applicable case law holds that a comment is improper only if we conclude that "the language used was 'manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *Padilla, supra,* at 158, quoting *United States v. Wright,* 309 F.2d 735, 738 (7th Cir. 1962).

Applicable case law further holds that a comment is not improper if it is directed to and made in response to a subject which the defense raised in its closing argument to the jury. *Bradford v. Stone,* 594 F.2d 1294 (9th Cir. 1979); *United States v. Warren,* 550 F.2d 219 (5th Cir. 1977); *Sanchez v. Heggie,* 531 F.2d 964 (10th Cir. 1976); *United States v. Cianciulli,* 482 F.Supp. 585 (E.D. Pa. 1979). In this case the comments explained why proof of motive and further corroborating proof were unavailable, which were subjects raised by defense counsel in his closing argument to the jury. Consequently, they were not improper.

Since we find that the comments were not improper, we need not address the question as to whether the instruction cured the problem that would have been created by an improper comment.[8]

## XI.

Lincoln contends that the evidence was insufficient to support the verdicts, and, therefore, the circuit court erred when it denied

---

[8] In *Melear, supra,* the Hawaii Supreme Court stated that "even though the prosecutor's comments may have been improper, any harm or prejudice to appellant can be cured by the court's instructions to the jury." However, in *State v. Okumura,* 58 Haw. 425, 570 P.2d 848 (1977), the Hawaii Supreme Court said that the rule in Hawaii is that the violation of a constitutional right is presumed to be prejudicial and in such cases the State has the burden of proving that the violation was harmless beyond a reasonable doubt.

his Rule 29(c), HRPP, motion for a judgment of acquittal after the jury returned its verdicts of guilt.

The standard to be used when passing upon a Rule 29(c), HRPP, motion made at that point in the proceedings[9] is as follows: Whether upon the evidence, viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a jury might fairly and rationally conclude beyond a reasonable doubt that the accused is guilty. *State v. Summers,* 62 Haw. 325, 614 P.2d 925 (1980); *State v. Nuetzel,* 61 Haw. 531, 606 P.2d 920 (1980). In this case the answer to that question is yes.

Affirmed.

*Eric A. Seitz* for defendant-appellant.

*Arthur E. Ross (Randal S. Yoshida* on the brief) for plaintiff-appellee.

---

[9] The standard of review is different if the motion is made at the end of the prosecutor's opening statement. *State v. Simpson,* 64 Haw. 363, 641 P.2d 320 (1982).