**STATE OF HAWAII**, Plaintiff–Appellant, v. **JOHN KALANI LINCOLN**, Defendant–Appellee

NO. 15141

(CR. NO. 90–1022)

JANUARY 9, 1992

LUM, C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS JUDGE HEEN, IN PLACE OF PADGETT, J., RECUSED

OPINION OF THE COURT BY LUM, C.J.

Appellant State of Hawaii (State) appeals the circuit court's order dismissing the indictment charging appellee John Kalani Lincoln (Lincoln) with murder in violation of Hawaii Revised Statutes (HRS) §§ 707–701, 702–221, 707–222 and an order granting a judgment of acquittal. The action of the lower court in disposing of this case without trial is in contravention of the

mandate this court issued remanding this case for a new trial following a prior appeal reported in *State v. Lincoln*, 71 Haw. 274, 789 P.2d 497, *cert. denied*, ___ U.S. ___, 111 S. Ct. 277 (1990).

Because the lower court acted outside the scope of our mandate in dismissing this case without trial and we reject appellee's assertion that a subsequent trial is barred by the double jeopardy clause, we reverse the trial court's decision and again remand for a new trial.

I.

On May 4, 1978, Anthony Kekona, Jr. (Kekona) shot and killed Paul Warford (Warford) and David Blue (Blue) and seriously wounded Harriet Savage (Savage). Kekona pleaded guilty and was sentenced for the murders of Warford and Blue and the attempted murder of Savage. After sentencing, Kekona claimed that he had been hired by Lincoln to accomplish the killings.

Following the sworn testimony of Kekona, the State began an investigation of Lincoln which included gathering evidence through wiretaps and single party consent telephone tape recordings. The State investigation eventually led to charges against Lincoln.

John Kalani Lincoln was initially tried in 1980 on two counts of "murder for hire," and a third count of "attempted murder for hire." This trial resulted in convictions for the murders of Blue and Warford and attempted murder of Savage, but the jury failed to find that Lincoln did these crimes "for hire" as required under HRS § 706–606 (1976). Lincoln was sentenced to concurrent terms of life imprisonment with parole and twenty years. The judgment was affirmed on appeal by the Hawaii Intermediate Court of Appeals (Intermediate Court). The Intermediate Court noted that there actually was no "murder for hire" offense but that murder for hire was only a jury–considered sentencing enhancement

provision under the law. However, the Intermediate Court found that Lincoln was not prejudiced by the mischaracterization of murder for hire as an offense rather than a sentencing enhancement. *State v. Lincoln*, 3 Haw. App. 107, 643 P.2d 807, *cert. denied*, 64 Haw. 689 (1982).

Subsequently, the United States District Court denied Lincoln's petition for a writ of habeas corpus. On appeal from this denial, the Ninth Circuit Court of Appeals affirmed in part, and reversed and remanded in part to the federal district court. *Lincoln v. Sunn*, 807 F.2d 805 (9th Cir. 1987). Upon further findings, the federal district court granted Lincoln's petition for habeas relief and required that he be retried. *Lincoln v. Sunn*, 674 F. Supp. 788 (D. Haw. 1987). The district court determined that certain comments by the prosecution regarding Lincoln's failure to testify at his first trial were not harmless error and violated his constitutional rights. *Id.* at 791.

On January 17, 1989, a second trial was had for the murders of Warford and Blue and the attempted murder of Savage. At this trial, Kekona refused to testify and the State read Kekona's testimony from the first trial to the jury. The jury convicted Lincoln of the murder of Warford but acquitted him of the murder of Blue and the attempted murder of Savage.

This second conviction for the murder of Warford was appealed to this court and we reversed and remanded the case for a new trial in 1990. *State v. Lincoln*, 71 Haw. 274, 789 P.2d 497, *cert. denied*, ___ U.S. ___, 111 S. Ct. 277 (1990). We held that the admission of Kekona's former testimony without Kekona's live testimony was improper and in violation of Lincoln's confrontation right. *Id.* at 280–81, 789 P.2d at 500.

Upon remand, during the pretrial phase of the scheduled third trial, the trial court entertained several defense motions for dismissal of the indictment and/or judgment of acquittal. These motions were based on the State's apparent inability to produce

Kekona or any new witness for this third trial.[1] When it became apparent that neither Kekona nor a new witness would testify, the lower court reconsidered these motions and granted Lincoln's motion for a judgment of acquittal and/or dismissal of the indictment as to the remaining murder count. The lower court, citing our decision in *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705 (1982), based its ruling on its inherent ability to dismiss an indictment with prejudice in the administration of justice. It did so over the objections of the prosecuting attorney and in contradiction of this court's mandate for a new trial. We now consider whether the lower court's actions were proper.

## II.

The lower court mischaracterized its ruling as an acquittal. An acquittal is typically entered at certain critical points in a criminal proceeding. These points are defined in Rule 29 of the Hawaii Rules of Penal Procedure (HRPP). *But cf. State v. Simpson*, 64 Haw. 363, 641 P.2d 320 (1982) (rarely, a trial court may grant a motion to acquit after prosecutor's opening statement). In particular, HRPP Rule 29(a) provides that, "[t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction . . . ." HRPP Rule 29(c) also permits the court to entertain a motion to acquit for ten days after the jury has rendered a verdict of guilty or is discharged without having returned a verdict. Since the trial had not commenced in this case, the pretrial period was not an appropriate juncture to entertain the motion for acquittal.

---

[1] The State represented for a period of this time that it would produce a woman named Margaret Tartt who would testify that she was an intermediary between Kekona and Lincoln and would provide incriminating evidence of a conspiracy. The State later informed the trial court that it was unable to locate Ms. Tartt.

Furthermore, in *State v. Dow*, 72 Haw. 56, 806 P.2d 402 (1991), we followed the test enunciated in *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977), when we said, "[a] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in defendant's favor], correct or not, of *some* or all of the factual elements of the offense charged.' " 72 Haw. at 65, 806 P.2d at 407 (quoting *Martin Linen*, 430 U.S. at 570–71; emphasis added in *Dow*). As the court made no factual determination as to elements of the offense charged, the court's action could not be an acquittal, but could only be a dismissal with prejudice. Thus, we hold that this court has jurisdiction to entertain this appeal under HRS § 602–5, pursuant to the authority of the State to appeal under HRS § 641–13(1).

### III.

"It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court." 5 AM. JUR. 2D *Appeal and Error* § 991 (1962 & Supp. 1991) (footnote omitted). This is not to say that a trial court is bound to perform the mandate of an appellate court under subsequently changed circumstances or is not free to decide issues not covered in the mandate. *See, e.g.*, *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438 (9th Cir. 1982) (when matters are not explicitly or by "necessary implication" decided on prior appeal, "lower courts are free to decide issue on remand"). But in the instant case, nothing had changed between our mandate and the dismissal of the case.

In *Robinson v. Ariyoshi*, 65 Haw. 641, 658 P.2d 287 (1982), *reconsideration denied*, 66 Haw. 528, 726 P.2d 1133 (1983), we said, "[circuit] courts are endowed with no statutory authority to review the decisions of our state supreme court." *Id.* at 662, 658 P.2d at 303. And the Ninth Circuit Court of Appeals has explained,

"when acting under an appellate court's mandate, an inferior court 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded.' " *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). In essence, the lower court ignored this rule in the instant case and made a ruling contrary to the mandate of this court without being confronted with new or changed circumstances. When we remanded the case for a new trial, we were cognizant of the fact that Kekona might continue to refuse to testify. Nonetheless, implicit in our remand was a finding that, on balance, the public's interest and the defendant's interest in fundamental fairness were served by conducting a new trial. We therefore conclude that the trial court stepped beyond the bounds of the mandate when it granted the motion to dismiss the indictment in a situation where it had before it the same factual case as did we when we ordered a new trial.

## IV.

Lincoln also claims that the double jeopardy clauses of the United States Constitution and the Hawaii State Constitution protect him from retrial because he was acquitted of the so–called "murder for hire" offense in the first trial. The Intermediate Court characterized the charges in the first trial as follows:

> We agree that murder is not a lesser included offense of murder for hire. . . . There is no offense of "Murder for Hire." A defendant may be convicted only of an offense included in an offense charged in the indictment or the information.
> However, the Hawaii Supreme Court . . . held that where an indictment states all the essential elements of

the crime of murder, it is better "to include in the indict-
ment the allegations, which if proved, would result in
application of a statute enhancing the penalty for the
crime committed." Here, the State did just that, although
somewhat inartfully. The indictment gave notice to Lin-
coln prior to trial that if he were convicted of the Class A
felony of murder, and if the jury found that he did it "for
Hire," he could . . . receive an enhanced sentence.

3 Haw. App. at 120, 643 P.2d at 816–17 (quoting *State v. Apao*, 59
Haw. 625, 636, 586 P.2d 250, 258 (1978) (footnote and citations
omitted)). The best characterization of the first charges was that
the trial court, however inaccurately, treated murder as a lesser
offense. The subsequent retrials stem from his conviction for the
murder charge, not from his so–called acquittal of the sentence
enhancement for murder for hire.

We choose to follow Judge David A. Ezra's reasoning in
denying habeas corpus relief to Lincoln on July 17, 1990. *Lincoln
v. Sunn*, Civil No. 82–0528 (D. Haw. July 17, 1990).

First, we would note that the instant case is "pretrial" for pur-
poses of this appeal and a subsequent trial following this decision
is therefore not barred under the double jeopardy clause. In *United
States v. Sanford*, 429 U.S. 14 (1976), the United States Supreme
Court considered a similar question. There, following a mistrial
and during preparation for a subsequent trial, the district court
dismissed the case and the prosecutor appealed. Ordinarily, a
dismissal following the attachment of jeopardy might bar such
an appeal and a retrial. There, the Supreme Court said:

The District Court's dismissal of the indictment
occurred several months after the first trial had ended
in a mistrial, but before the retrial of respondents had
begun. This case is, therefore, governed by [*Serfass v.
United States*, 420 U.S. 377 (1975)], in which we held
that a pretrial order of the District Court dismissing an

indictment charging refusal to submit to induction into the Armed Forces was appealable under 18 U.S.C. § 3731. The dismissal in this case, like that in *Serfass*, was prior to a trial that the Government had a right to prosecute and that the defendant was required to defend. Since in such cases a trial following the Government's successful appeal of a dismissal is not barred by double jeopardy, an appeal from the dismissal is authorized . . . .

*Id.* at 16. Thus, in the instant case, an appeal is permissible pursuant to our own HRS § 641–13(1), the order of the lower court being characterized as "an order or judgment quashing, setting aside, or sustaining a motion to dismiss, any indictment or information or any count thereof[.]" And as in *Sanford, supra,* a retrial from this appeal is permissible.

We reject Lincoln's claim that double jeopardy bars his retrial for murder because of his apparent acquittal of the "murder for hire" of Warford which occurred at his first trial. It is undisputed that retrial on charges of which Lincoln was acquitted at the two trials are now barred by the double jeopardy clause. Neither does the State seek sentencing enhancement. But Lincoln seeks to bar retrial of a charge for which he was convicted twice. Lincoln maintains that since he was not present at the time of the killings, the conduct for which he was tried in both the murder for hire and the murder charges was the same, namely his activities with Kekona which resulted in the murder. Under *Grady v. Corbin,* 495 U.S. 508, 110 S. Ct. 2084 (1990), he argues that he cannot be retried for the same conduct that constitutes a crime of which he has been acquitted, namely, hiring Kekona to commit murder. We think that *Grady* addresses a factual situation in which the defendant is charged and acquitted in one proceeding and subsequently charged and tried for the same conduct in a second proceeding. Additionally, we think that Lincoln confuses conduct for result. It is true that the murder and sentence enhancement for murder for

hire focus on the same result, the death of Warford. And it is true that the evidence presented at trial will be substantially similar to that presented in his first trial. However, the conduct on which accomplice liability is based is the facilitation or promotion of a murder, and this conduct is different than conduct creating criminal liability under the then existing murder for hire statute of "being responsible for hiring the killer." *Compare* HRS § 702–222 and § 706–606 (1985).

In *Grady*, the United States Supreme Court stated:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

495 U.S. at 521, 110 S. Ct. at 2093 (footnote omitted). In our opinion, Lincoln's argument misses the mark. At the same time that Lincoln was acquitted of the so–called "murder for hire" charge, he was convicted of murder. Since it was not alleged that he was the "trigger man" or even at the scene of the crime, the basis for that conviction must have been accomplice liability, an alternative for which the original jury received instructions. Accomplice liability presented the jury with analysis of different conduct than "murder for hire" in that no "hiring" needed to be proved. Accomplice liability requires only the promotion or facilitation of a crime. While evidence of hiring was presented to the jury and the jury possibly considered it in convicting Lincoln of murder, it was not an element of the murder charge of which he was convicted, nor was it the conduct on which liability was found. *Grady* specifically holds that it is not an "actual evidence" or "same evidence" test.

> This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in

one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding.

*Id.* at 521–22, 110 S. Ct. at 2093 (footnote omitted). We conclude that the double jeopardy clause of both the United States Constitution and the Hawaii State Constitution does not bar a retrial of Lincoln.

We also concur with Judge Ezra that Lincoln cannot assert collateral estoppel as a bar to a retrial. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties . . . ." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). In *Ashe*, the government wished to relitigate the issue of whether the defendant was the armed robber in multiple prosecutions based on crimes against multiple victims involved in the same criminal incident. In the instant case, not involving separate prosecutions, the State wishes only to prove Lincoln's liability for accomplice murder, a charge having no requirement of hiring or murder for profit. Therefore no issue of ultimate fact related to the murder charge was decided when the jury failed to find Lincoln committed the murder "for hire." Indeed, by Lincoln's two convictions for the murder of Warford in prior trials, the ultimate issue of fact for accomplice liability was decided in both trials in favor of the State.

## V.

In *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705 (1982), we held that a trial court possessed the inherent discretionary ability to dismiss an indictment with prejudice over the objections of the prosecuting attorney when two previous trials had resulted in hung juries and no new evidence was to be adduced in the upcoming trial. We provided trial courts with a framework through which to " 'balanc[e] the interest of the state against fundamental fairness to a defendant' " as well as the " 'orderly functioning of the court sys-

tem.' " *Id.* at 56, 647 P.2d at 712 (quoting *State v. Braunsdorf*, 297 N.W.2d 808, 817 (Wis. 1980)). Those factors included:

1) the severity of the offense charged;
2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known;
3) the character of prior trials in terms of length, complexity and similarity of evidence presented;
4) the likelihood of any substantial difference in a subsequent trial, if allowed;
5) the trial court's own evaluation of relative case strength; and
6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.

*Id.* at 56, 647 P.2d at 712–13. Except for the "case strength" factor, we find little in the lower court's decision to support a dismissal of the indictment. Furthermore, in *Moriwake* as well as in *State v. Alvey*, 67 Haw. 49, 678 P.2d 5 (1984), we cautioned that a trial court's inherent power to dismiss an indictment is not a broad power and that trial courts must recognize and weigh the State's interest in prosecuting crime against fundamental fairness to the defendant. In *Moriwake* we said, "we think that the magnitude of the respective interests of society and of criminal defendants which are implicated in this area of the law requires that we more fully delineate the parameters within which this discretion is properly exercised." 65 Haw. at 56, 647 P.2d at 712. In *Alvey* we made clear that, even if "there are serious questions" about a material element of a crime, it is not within the trial court's discretion to usurp the function of the trier of fact before trial. 67 Haw. at 58 n.6, 678 P.2d at 11 n.6.

In the instant case, the lower court was not confronted with the prospect of a third trial based on evidence which had failed to convict a defendant two previous times. Rather, the trial court faced

the prospect of a third trial following two prior convictions, albeit with a lesser quantum of evidence than previously available. While it might be true that significant evidence cannot be presented if Kekona does not testify, the State still possesses some evidence against Lincoln. It is not for the trial court to weigh the evidence in determining whether to proceed to trial.[2]

The lower court might have been misled by our comment that the evidence was "flimsy" without Kekona's testimony when we reversed and remanded in *State v. Lincoln*, 71 Haw. at 280, 789 P.2d at 500. By so stating, we wished merely to note that the admission of Kekona's former testimony in violation of Lincoln's constitutional right to confrontation could not be harmless error. We did not mean to imply that without Kekona's testimony, the indictment could not be sustained or that Lincoln was entitled to acquittal.

## VI.

For the foregoing reasons, we reverse the decision of the lower court and remand the case for a new trial.

*Ted Baker* (*John C. Bryant, Jr.* and *Steven S. Michaels* on the briefs), Deputy Attorneys General, for plaintiff–appellant.
*Eric A. Seitz*, for defendant–appellee.

---

[2] Among the evidence which was presented at the two prior trials are two incriminating statements by Lincoln himself, allegedly made to Maui Police Officers Gary Danley and Charles Ferren. Lieutenant Danley testified that Lincoln said, "tell the wahine it wasn't meant for her" and Ferren testified that Lincoln said, "tell the broad my deal was with Warford, not with her." This evidence would have been presented at the third trial as well.

At the second trial, the jury acquitted Lincoln of charges related to the murder of Blue and attempted murder of Savage. This suggests that the testimony of the police officers was believed.