STATE OF HAWAII, Plaintiff-Appellant,
v.
MARSHALL HINTON, Defendant-Appellee.
No. 27719.
Intermediate Court of Appeals Hawaii.
August 26, 2008.
On the briefs:
James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellant.
Wendi L. Dotson, Deputy Public Defender, for Defendant-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., and NAKAMURA, and FOLEY, J., Dissenting.
Plaintiff-Appellant State of Hawai`i appeals from the December 21, 2005 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Dismiss Indictment with Prejudice, filed in the Circuit Court of the First Circuit.[1]
Defendant-Appellee Marshall Hinton was indicted on one count of Sexual Assault in the Third Degree, in violation of Hawaii Revised Statutes § 707-732(1)(b) (Supp. 2007). The charge stemmed from an incident on December 7, 2004 in which Hinton allegedly touched the complaining witness (CW), who was 13 years old at the time, on her genitalia. The case was tried to a jury on September 12 and 13, 2005. The circuit court denied a motion for judgment of acquittal at the close of the State of Hawai`i's case. Hinton and another witness then testified for the defense, and the case was submitted to the jury. After the jury-reported that it was deadlocked and unable to reach a verdict, the circuit court declared a mistrial. The jury later indicated to counsel that eight jurors had voted to find Hinton not guilty, and four had voted to find him guilty. Hinton then moved to dismiss the indictment with prejudice pursuant to State v. Moriwake, 65 Haw. 47, 647 P.2d 705 (1982), and the circuit court granted the motion.
On appeal, the State contends that the circuit court erred by dismissing the indictment against Hinton with prejudice.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, as well as the relevant statutory and case law, we resolve the State's point of error as follows:
In Moriwake, the supreme court set forth the following framework for trial courts to apply in considering motions to dismiss after hung jury mistrials:
Simply put, "(i)t is a matter of balancing the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system." The factors which the trial court should consider in undertaking this balance include the following: (1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.
Id. at 56-57, 647 P.2d at 712-13 (citations omitted).
The supreme court concluded that the circuit court had not "abused its discretion" in dismissing a manslaughter indictment after "two full, nearly identical trials" failed to result in a verdict. Id. at 57, 647 P.2d at 713.
While the dismissal of an indictment after one or more mistrials should be reviewed for abuse of discretion, that discretion is limited in light of the "magnitude of the respective interests of society and of criminal defendants which are implicated in this area of the law[.]" Id. at 56, 647 P.2d at 712; see State v. Lincoln, 72 Haw. 480, 491, 825 P.2d 64, 70 (1992) (stating that "a trial court's inherent power to dismiss an indictment is not a broad power and that trial courts must recognize and weigh the State's interest in prosecuting crime against fundamental fairness to the defendant"). Indeed, some courts have observed that dismissal of an indictment in these circumstances raises separation-of-powers concerns which require that the power to dismiss be used sparingly:
[B]ecause of separation-of-powers considerations and the public's interest in the prosecution of those charged with criminal offenses, the trial court's discretion to dismiss cases in the interest of justice is necessarily limited. Generally, trial courts may dismiss prosecutions in furtherance of justice against the wishes of the prosecutor only in rare and unusual cases when compelling circumstances require such a result to assure fundamental fairness in the administration of justice.
State v. Sauve, 666 A.2d 1164, 1167 (Vt. 1995) (citations omitted); State v. Gonzales, 49 P.3d 681, 686 (N.M. Ct. App. 2002) ("As long as the court's discretion in dismissing successive prosecutions is limited and exercised with great caution, there is no separation of powers violation. We . . . limit the discretion of trial courts so that they may dismiss criminal prosecutions only in the most extreme of cases.").
Applying these principles here, we conclude that the circuit court abused its discretion in dismissing the indictment. First, the circuit court found that the severity of the offense weighed against a retrial because it was a class C felony and "[w]e've got A's and B's to deal with." While the statutory classification of the offense is a legitimate reference point, limiting the analysis to the statutory classification did not provide a complete assessment of the seriousness of the alleged conduct. The CW testified to a course of conduct by the defendant, including showing her pornographic pictures prior to the alleged December 7, 2004 touching incident, suggesting that the CW flash her breasts to him after the incident, showing her a pornographic video while they were alone in his truck on December 19, 2004, and asking the CW to sit on his lap at that time. The State argued in closing that "the defendant was trying to court her and wanted to have a sexual relationship with her and actually did sexually touch her on her genitalia." In contrast, the defense argued that Hinton was an innocent man and that "sometimes children lie to get attention, to get others into trouble, and to get themselves out of trouble. And that is what happened here."
In short, the State contended that Hinton was a sexual predator, while the defense portrayed him as an innocent victim. There is a strong societal interest in having a jury resolve that dispute, if possible, and thus this factor weighs in favor of a retrial.
Second, the circumstances of the deliberations in the first trial suggest that a verdict could be reached in a second trial. The circuit court observed in its oral ruling that:
The jury did seem to have problems following the evidence, but they were allowed to take notes. I'm not sure I saw many of them taking a lot of notes during the course of the trial. But all in all, the questions they asked and their trouble following the evidence makes me feel that this factor weighs in favor of a retrial.
We agree with the assessment that the jury had trouble following the evidence. The jury's questions to the court during its deliberations, and its comments when the court responded to those questions, suggest that the jury was confused about the testimony at trial. However, as the circuit court observed in granting the dismissal, this was not a particularly complex case. Thus, there is a basis for concluding that another jury would be able to reach a verdict.
Third, in its oral ruling dismissing the indictment, the circuit court considered the fifth Moriwake factor ("the trial court's own evaluation of relative case strength") and said that the evidence "weighs in favor of retrial." However, the circuit court concluded that it could give little weight to its own assessment of the evidence, because State v. Lincoln, 72 Haw. 480, 825 P.2d 64 (1992), precluded it from doing so. That reading of Lincoln is incorrect. Unlike the instant case, Lincoln did not involve a dismissal based on a hung jury mistrial. Rather, the defendant in Lincoln had been tried and convicted twice, with the first conviction set aside on federal habeas review and the second conviction reversed on direct appeal by the Hawaii Supreme Court. Id. at 483, 825 P.2d at 66-67. Prior to a third trial, the circuit court dismissed the indictment in the apparent belief that the evidence against the defendant would be weak in light of the supreme court's ruling that the prior testimony of an unavailable witness had been improperly admitted in the second trial.
In reversing the dismissal, the Hawaii Supreme Court held that the circuit court had "stepped beyond the bounds" of the mandate on remand, id. at 486, 825 P.2d at 68, and noted that "it is not within the trial court's discretion to usurp the function of the trier of fact before trial. Id. at 491, 825 P.2d at 71 (citation omitted). However, at no point did the supreme court suggest that it was reconsidering Moriwake or that it was illegitimate for circuit courts to consider the strength of the evidence in deciding whether to allow a retrial after a jury had been unable to reach a verdict in a prior trial. To the contrary, the supreme court clearly distinguished the Moriwake situation from that present in Lincoln. Id. at 71, 825 P.2d at 491-92 ("In the instant case, the lower court was not confronted with the prospect of a third trial based on evidence which had failed to convict a defendant two previous times. Rather, the trial court faced the prospect of a third trial following two prior convictions, albeit with a lesser quantum of evidence than previously available.").
Finally, the fact that there has been only one prior trial weighs significantly in favor of allowing a retrial. While the supreme court in Moriwake recognized that dismissal could be appropriate after a single mistrial, the opinion implies that such dismissals would be rare. 65 Haw. at 57, 647 P.2d at 713. Concerns about the unfairness of subjecting a defendant to the burden of multiple trials, id. at 56, 647 P.2d at 712, are less strong when a defendant has only been subjected to one prior trial.
Indeed, Hinton has not cited any appellate decisions from Hawai`i or any other jurisdiction in which a dismissal after a single mistrial based on a hung jury was affirmed. In Suave, the Supreme Court of Vermont considered a dismissal after a single jury failed to reach a verdict. 666 A.2d at 1165. That case was factually similar in many ways to the instant case the defendant was charged with sexually assaulting a child, the child had "great difficulty" testifying, and closing arguments "centered almost exclusively on [the child's] credibility." Id. The Supreme Court of Vermont, while noting that there could be circumstances in which dismissal after one mistrial could be appropriate, reversed the dismissal and remanded for a retrial. Id. at 1169-70 ("Considering the relevant factors, particularly the fact that there has been only one prior trial, the seriousness of the charged offense, the absence of any prosecutorial misconduct, and the lack of any showing of prejudice that would result to defendant from retrial, the court abused its discretion. . . . ").
There are substantial factors here weighing in favor of a retrial: this is a serious offense, there is reason to conclude that another jury could reach a verdict, and the defendant has been subjected to only one trial. There are some factors that weigh against a retrial, such as the fact that it does not appear likely that the State will introduce significantly different evidence in another trial. While that is a legitimate consideration, we believe that it must be tempered by the circuit court's observation that the jury appeared confused by the testimony even though the trial was not particularly complex. Thus, there is a basis for concluding that another jury could reach a verdict even if the evidence is essentially the same. On balance, we believe that the factors identified by Moriwake weigh strongly in favor of a retrial, and accordingly, we conclude that the circuit court abused its discretion in dismissing the indictment.
Therefore,
We vacate the December 21, 2005 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Dismiss Indictment with Prejudice, filed in the Circuit Court of the First Circuit, and remand this case for further proceedings consistent with this order.
DISSENTING OPINION BY FOLEY, J.
I respectfully dissent.
The standard of review of a trial court's decision to dismiss an indictment is abuse of discretion. State v. Wong, 97 Hawai`i 512, 517, 40 P.3d 914, 919 (2002). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." Id. (citations omitted).
In State v. Moriwake, 65 Haw. 47, 647 P.2d 705 (1982), the Hawai`i Supreme Court held that "the judicial power which seeks to `administer justice' is properly invoked when a trial court sua sponte dismisses an indictment with prejudice following the declaration of one or more mistrials because of genuinely deadlocked juries[.]" Id. at 55, 647 P.2d at 712 (emphasis added).
The Moriwake court also recognized that the judicial power to dismiss indictments is not unlimited and set out six factors to ensure that trial courts remained within the bounds of their discretion:
In considering whether such power and responsibility were properly exercised [by the trial court], we in turn will accord deference to the conclusion of the trial court for much the same reason that we will seldom question the propriety of a hung jury mistrial declaration. But we think that the magnitude of the respective interests of society and of criminal defendants which are implicated in this area of the law requires that we more fully delineate the parameters within which this discretion is properly exercised.
Simply put, it is a matter of balancing the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system. The factors which the trial court should consider in undertaking this balance include the following: (1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.
Id. at 56, 647 P.2d at 712-13 (internal quotation marks, citations, and brackets omitted). See State v. Lincoln, 72 Haw. 480, 490-91, 825 P.2d 64, 70 (1992) (citing the six Moriwake factors as the "framework . . . to Walanc[e] the interest of the state against fundamental fairness to a defendant as well as the `orderly functioning of the court system'").
In this case, the circuit court applied the Moriwake factors and concluded:
1. The trial court has the inherent discretionary ability to dismiss an indictment with prejudice after balancing the interest of the state against fundamental fairness to a defendant as well as the orderly functioning of the court system.
2. In balancing these interest[s] the court shall consider the following factors: (1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.
3. As to the severity of the offense charged, character of the trial, likelihood of any substantial difference in a subsequent trial, and the professional conduct and diligence of counsel, the court finds that these factors weigh against retrial.
4. Consequently, the court finds that in balancing all of the afore-mentioned factors, the interest[s] of the state do not outweigh the fundamental fairness to a defendant as well as the orderly functioning of the court system.
The circuit court did not exceed the bounds of reason or disregard rules or principles of law or practice, and, therefore, the circuit court did not abuse its discretion[1] in dismissing the indictment against Hinton.
NOTES
[1] The Honorable Richard K. Perkins presided.
[1] I believe that the majority's "separation of powers concerns" are unwarranted. In Moriwake, the Hawaii Supreme Court stated:

[W]e are cognizant of the deference to be accorded the prosecuting attorney with regard to criminal proceedings, but such deference is not without bounds. As stated elsewhere:
Society has a strong interest in punishing criminal conduct. But society also has an interest in protecting the integrity of the judicial process and in ensuring fairness to defendants in judicial proceedings. Where those fundamental interests are threatened, the "discretion" of the prosecutor must be subject to the power and responsibility of the court.
Id. at 56, 647 P.2d at 712 (quoting State v. Braunsdorf, 98 Wis. 2d 569, 589, 297 N.W.2d 808, 817 (1980) (Day, J. dissenting)).