53 P.3d 307

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Hymie J. MEYER, Defendant–Appellant.**

No. 24108.

Intermediate Court of Appeals of Hawai'i.

July 19, 2002.

Linda C.R. Jameson, Deputy Public Defender, State of Hawai'i, on the brief, for defendant-appellant.

Tracy A. Jones, Deputy Prosecuting Attorney, County of Maui, on the brief, for plaintiff-appellee.

WATANABE, Acting C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Hymie J. Meyer (Meyer) appeals the January 26, 2001 judgment of the circuit court of the second circuit, the Honorable Shackley F. Raffetto, judge presiding, that convicted him of two counts of promoting a dangerous drug in the third degree (cocaine and methamphetamine, respectively), in violation of Hawai'i Revised Statutes (HRS) § 712–1243(1) (1993),[1] and two counts of unlawful possession of drug paraphernalia (for cocaine and methamphetamine, respectively), in violation of HRS § 329–43.5(a) (1993).[2]

On appeal, Meyer contends the prosecutor engaged in misconduct during rebuttal argument, thus denying Meyer a fair trial. We disagree and affirm.

## I. Background.

Evidence at trial revealed the following. In June 1997, a search warrant was issued authorizing a search of the residence at 60 Wailani Street in Wailuku. Maui Police Department officer Anthony Poplardo (Officer Poplardo) obtained information for the search warrant from various informants, criminal background checks, neighbor complaints and a confidential informant.

On June 13, 1997, Officer Poplardo led a team of thirteen police officers and one federal agent in the execution of the search warrant. The warrant was executed at 7:00 a.m. Officer Poplardo thrice knocked on the front door and yelled very loudly, "Police, search warrant, demand entry." Because there was no response to any of his demands, and after thirty to forty seconds had elapsed, Officer Poplardo tried the door and found it

unlocked. When he opened the door, Officer Poplardo discovered Meyer standing right inside the doorway, as if Meyer were about to open the door.

Officer Poplardo gave Meyer a copy of the search warrant and orally advised him of his constitutional rights. Meyer indicated that he was willing to waive those rights and make a statement. Officer Poplardo asked Meyer one question, regarding the occupancy of the house. Meyer answered that he occupied the northeast bedroom.

During the search of the house, numerous paraphernalia, several of which contained cocaine or crystal methamphetamine residue,[3] were recovered in the northeast bedroom. A water bill addressed to Meyer was also found there, along with photographs of him and his co-defendant, Leonani S.J. Pahukoa (Pahukoa).

Meyer was arrested and transported to the police station. There, Officer Poplardo again advised Meyer of his constitutional rights, and Meyer again elected to make a statement. According to Officer Poplardo,

[Meyer] said that he does sell drugs, usually crystal methamphetamine and cocaine. And the reason he did it was to survive financially. He said he initial—usually works it—he's more of a middleman type of operation where he'll get orders of potential customers and go to one of numerous suppliers who [ (sic) ] he knew, buy the product. Then he'd skim off the top, and use 'what he skimmed off the top for resale to make money for his own personal use.

The State called two more witnesses after Officer Poplardo—evidence custodian Sheila Kimura and criminalist Julie Wood—before resting. Meyer and Pahukoa then rested without presenting evidence. Just before

---

1. Hawai'i Revised Statutes (HRS) § 712–1243(1) (1993) provides that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

2. HRS § 329–43.5(a) (1993) provides, in pertinent part, that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, re-

pack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter."

3. Maui Police Department criminalist Julie Wood tested the residues found in several of the paraphernalia recovered from the northeast bedroom of 60 Wailani Street and determined that they contained cocaine and, in one instance, methamphetamine.

closing arguments, the court instructed the jury, in pertinent part, as follows:

> You must consider only the evidence which has been presented to you in this case and such inferences therefrom as may be justified by reason and common sense.
>
> . . . .
>
> Statements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence.

After the court read its formal instructions to the jury, and just before closing arguments commenced, the court reminded the jury that

> again, what the lawyers say and their recollection of the evidence are not binding on you. You're the judges of the evidence and credibility of all witnesses. But please pay close attention. I think you will find it very interesting.

During his closing argument, Meyer's counsel implied that Officer Poplardo had to somehow make up for a major drug investigation that failed:

> Officer Poplardo said himself they did not recover one dealership quantity anywhere in the house, and something smells funny. All those officers involved, and one officer—just one officer recovers, handles, logs, packages every single bit of evidence recovered. He—in this case there is only one officer that does a police report, and that officer who did everything in this case is Officer Poplardo.
>
> Now, it is not far-fetched to say that this search warrant, this execution of a search warrant, this big drug bust, was a huge failure, and it is also not far-fetched to picture Officer Poplardo red in the face that day, red, red in the face, cussing, upset, and all the other officers going, "Officer Poplardo, this gotta be a joke. We ransacked this house, and we walk away with residue? You gotta be kidding."
>
> Officer Poplardo, feeling bad for his men, said, "Okay. You know what, guys? Sorry. I will take care of the police reports. I will take care of all the evidence. I will go to court. I will get our bust. I

will get our conviction. I will get a statement. I will take care of it. You guys go back home and sleep. Just write this one off. Sorry about it."

Then Meyer's counsel came right out with it and called Officer Poplardo a "liar":

> It's [ (police work) ] a demanding job, and I'm not going to be as nice as [Pahukoa's counsel], though, when we talk about Officer Poplardo. I am not going to say that maybe he's not credible; maybe he didn't tell the whole truth. The guy's a liar.
>
> He came in here and fudged 90 percent of the stuff he said.

The deputy prosecuting attorney (DPA) commenced the State's rebuttal argument as follows:

> [DPA]: Ladies and Gentlemen, I had a law school professor not too long ago that told us that in a criminal prosecution case, if you have the facts, argue the facts. If you have the law, argue the law. And if you don't have either—
>
> [PAHUKOA'S COUNSEL]: Your Honor, I object. This is improper argument.
>
> THE COURT: Overruled.
>
> [DPA]:—bang your fist on the table and blame the police officers, and that's exactly what's happening here.
>
> They are blaming Officer Poplardo for everything. They are calling Officer Poplardo a liar. Is he a liar? Have we corroborated anything Officer Poplardo said to you folks? It's all right here. You folks are going to get a chance to look at every piece of corroboration for Officer Poplardo's testimony.

It took the jury the better part of an afternoon to find Meyer guilty as charged on all counts.

## II. Discussion.

■ On appeal, Meyer argues that the DPA committed prosecutorial misconduct during his rebuttal argument, as quoted above, by improperly disparaging the defense, as well as defense counsel, and by arguing facts not in evidence.

"Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." *State v. McGriff*, 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994) (citations omitted). "It is a well-settled principle in this jurisdiction that allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction. Factors to consider are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." *State v. Klinge*, 92 Hawai'i 577, 590, 994 P.2d 509, 522 (2000) (brackets, citations, and internal quotation marks and block quote format omitted).

As a threshold matter, we question whether the rebuttal argument *sub judice* indeed constituted prosecutorial misconduct. *See, e.g., McGriff*, 76 Hawai'i at 160, 871 P.2d at 794 (first holding that there was no prosecutorial misconduct, then considering prejudice *arguendo* ); *State v. Lincoln*, 3 Haw.App. 107, 125, 643 P.2d 807, 820 (1982) ("Since we find that the [prosecutor's] comments were not improper, we need not address the question as to whether the [jury] instruction cured the problem that would have been created by an improper comment." (Footnote omitted.)).

In this connection, Meyer argues that

[t]he comments of the DPA ... constituted prosecutorial misconduct. These comments were improper suggestions and insinuations that disparaged both defense counsel, as well as the defense in this case. It is misconduct for a prosecutor to attack defense counsel's personal integrity or to suggest to the jury that defense counsel has acted in bad faith during trial. The prosecutor's comments went far beyond pointing out flaws or weaknesses in defense counsel's argument but instead improperly accused defense counsel of dishonest motives, subterfuge, and misdirection.

(Citations omitted.) Meyer also maintains that "[i]t is misconduct for a prosecutor to make assertions based on personal knowledge[,]" apparently referring to the DPA's use of his law professor's hoary maxim. Meyer concludes,

These comments were not harmless inasmuch [as] there was a strong likelihood that they could have affected the jury's verdict due to the blatant accusation that defense counsel engaged in misdirection, thus strongly undermining the credibility of defense counsel.

As a result, [Meyer] was deprived of his due process rights to a fair trial in violation of Article I, Section 5 of the Hawai'i Constitution and the 5th and 14th Amendments of the United States Constitution.

In *Klinge*, 92 Hawai'i at 595, 994 P.2d at 527, the Hawai'i Supreme Court concluded that the following remarks, made by the prosecutor during closing argument, were "clearly prosecutorial misconduct":

The defense lawyer did not tell you that like he's taking everything out of context like he's not going to give you the whole story. *He's not going to give you the whole picture because he has a duty to get his client off.*

*Id.* at 593, 994 P.2d at 525 (brackets and internal block quote format omitted; emphasis in the original). The supreme court so concluded because

[t]he remark was uninvited and unsupported by any evidence in the record. Not only did the remark constitute an impermissible attack on defense counsel's integrity, but operated to denigrate the legal profession in general. We strongly disapprove of such reckless and unsupportable comments by the prosecutor. Indeed, the prosecutor's remark lacked the professionalism and decorum required of attorneys who practice before the bar of the courts of Hawai'i.

*Id.* at 595, 994 P.2d at 527 (citations and internal quotation marks omitted). In promulgating this holding, the supreme court cited several cases from other jurisdictions in which prosecutorial argument was held improper because it expressed or implied, vari-

ously, that defense counsel lied, misled the jury, concealed evidence, distorted evidence, manufactured evidence, or otherwise presented a defense dishonestly. *Id.* at 593–95, 994 P.2d at 525–27.

We believe there is a fine but meaningful line between the prosecutor's remarks in *Klinge* and those under consideration here. We are hard put to discern in the DPA's remarks any accusation, express or implied, that defense counsel engaged in any of the exogenous improprieties catalogued in *Klinge* and the cases it cites. The DPA simply sought to show that defense counsel's unmitigated attack upon the credibility of Officer Poplardo was the vituperative last resort of a vaporous defense.

The argument was on the merits of the evidence and the resulting legitimacy *vel non* of defense counsel's argument. It did not in any wise imply skullduggery on the part of defense counsel, or otherwise denigrate defense counsel personally or professionally. Although the argument did criticize the defense case, it did not, we believe, transgress the "wide latitude ... in discussing the evidence" allowed to prosecutors in their closing arguments. *State v. Clark,* 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996) (citation omitted). It did not, in any event, stoop to the level of candor the supreme court has previously countenanced:

> Based upon the evidence in the present case and the context in which the phrase "cockamamie story" was utilized, we conclude that the prosecutor was well within the limits of propriety to infer, and indeed argue, that Clark's denial of drug usage was improbable, untruthful, and, in short, a "cockamamie story." Accordingly, we hold that there was no misconduct on the part of the prosecutor in this case.

*Id.* at 306, 926 P.2d at 211.

The DPA's rebuttal argument was not, moreover, "uninvited and unsupported by any evidence in the record." *Klinge,* 92 Hawai'i at 595, 994 P.2d at 527. It was in direct and temporally proximate response to the defense attack on Office Poplardo's credibility that culminated in the unadorned sobriquet, "liar." By this virtue as well, it was not misconduct: "Applicable case law further

holds that a comment is not improper if it is directed to and made in response to a subject which the defense raised in its closing argument to the jury." *Lincoln,* 3 Haw.App. at 125, 643 P.2d at 819 (citations omitted). *See also State v. Loa,* 83 Hawai'i 335, 354, 926 P.2d 1258, 1277 (1996) ("the DPA's rebuttal was responsive to defense counsel's closing argument regarding the state of the record ... and not to whether Loa chose not to testify in his own behalf[,]" and was therefore not improper).

■ As for Meyer's argument that the DPA's law school reminiscence improperly exploited the DPA's personal knowledge, we question whether the jury took it as anything more than a platform—perhaps apocryphal— for the DPA's argument. At any rate, it was trivial and insignificant in the context of this case, *cf. State v. Kupihea,* 80 Hawai'i 307, 317, 909 P.2d 1122, 1132 (1996) (the prosecutor's use of "hypothetical examples to illustrate legal principles during closing argument ... although arguably improper, ... was not prejudicial"), and Meyer fails to argue otherwise. *Id.* ("Kupihea has failed to show how the use of hypothetical examples illustrating manslaughter prejudiced him.").

■ Even if the DPA's rebuttal argument was prosecutorial misconduct, it was harmless beyond a reasonable doubt under the tripartite analysis long and consistently employed by the supreme court. *Klinge,* 92 Hawai'i at 590, 994 P.2d at 522.

With respect to "(1) the nature of the conduct[,]" *id.* (citations and internal block quote format omitted), we previously noted that the supreme court has countenanced a prosecutor's attack on the defense case arguably ·much more derogatory than the criticism in question here. *Clark,* 83 Hawai'i at 306, 926 P.2d at 211.

As for "(2) the promptness of a curative instruction[,]" *Klinge,* 92 Hawai'i at 590, 994 P.2d at 522 (citations and internal block quote format omitted), we recognize that there was no specific curative instruction given by the court in this case because the court overruled defense counsel's objection to the DPA's rebuttal. It is well-established, however, that generally relevant jury instruc-

tions can cure improper arguments by a prosecutor; especially where, as here, such instructions were given repeatedly. *See, e.g., Kupihea,* 80 Hawai'i at 317–18, 909 P.2d at 1132–33 (repeated instructions to the jury that remarks by counsel are not evidence were sufficient to cure a specific instance of arguably improper prosecutorial argument); *State v. Valdivia,* 95 Hawai'i 465, 481, 24 P.3d 661, 677 (2001) (where no specific curative instruction was given at the time the prosecutor made improper remarks, the misconduct was nevertheless harmless beyond a reasonable doubt because "the court did generally instruct the jury no less than three times that the statements and arguments of counsel were not evidence and were not to be considered as such during the jury's deliberations[,]" and the evidence against the defendant was not "so weak ... as to weigh in favor of finding the misconduct prejudicially harmful").

Finally, in connection with "(3) the strength or weakness of the evidence against the defendant[,]" *Klinge,* 92 Hawai'i at 590, 994 P.2d at 522 (citations and internal block quote format omitted), we believe the evidence against Meyer was cogent and compelling, if not positively overwhelming.

Hence, if the DPA's rebuttal argument was prosecutorial misconduct, there was, on balance, no "reasonable possibility that the error complained of might have contributed to the conviction." *Id.* (citations and internal quotation marks and block quote format omitted).

### III   Conclusion.

For the foregoing reasons, the January 26, 2001 judgment is affirmed.