250 P.3d 273

**STATE Of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Lopeti Lui TUUA, Petitioner/Defendant–Appellant.**

No. 29125.

Supreme Court of Hawai'i.

April 20, 2011.

Matthew S. Kohm, for petitioner-defendant-appellant.

Renee Ishikawa Delizo, Deputy Prosecuting Attorney, County of Maui, for respondent-plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ., and Circuit Judge NACINO, assigned by reason of vacancy.

Opinion of the Court by NAKAYAMA, J.

Lopeti Lui Tuua ("Tuua") was charged with assaulting a bouncer with a beer bottle. At trial, Tuua's half brother testified that he, rather than Tuua, assaulted the bouncer. During closing argument, the deputy prosecuting attorney commented that if the jury believed Tuua's half brother, no one would be convicted of assault. We hold that the deputy prosecuting attorney's comments were improper, and that they may have affected Tuua's conviction. We therefore vacate Tuua's judgment and conviction and remand the matter to the Circuit Court of the Second Circuit (circuit court).[1]

1. The Honorable Richard T. Bissen, Jr. presided.

## I. BACKGROUND

### A. Trial

This case arose from an incident in which David Brown ("Brown"), a bouncer, was struck with a beer bottle during a brawl at a bar. The pivotal issue at trial was who threw the bottle at Brown. The prosecution presented the testimony of the assaulted bouncer, Brown, another bouncer at the bar, Jason Inglish ("Inglish"), and a bartender, Renie Hamayelian ("Hamayelian"). All three testified that they were working on the night of the incident. Brown and Inglish testified that Tuua threw the bottle at Brown. Hamayelian testified that he and another customer collected the bottles when the fight broke out and Tuua was holding the only bottle they did not collect. Hamayelian saw the bottle in Tuua's hand before it broke, and he saw the broken bottle nearby after it hit Brown, but did not see Tuua throw it. The parties entered a stipulation into the record that Officer Asbel Polanco would have testified that he took Brown's statement on the night of the incident and Brown told him that Ikaika Kawai, a person Tuua was at the bar with, picked up a bottle and hit Brown on the head with it. After the stipulation was read into the record, the prosecution rested.

Tuua and his half brother, Brandon Carter ("Carter"), testified that Carter threw the bottle that struck Brown. The defense rested, and the circuit court instructed the jury that:

Statements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence.

Directly before closing arguments, the circuit court warned the jury that:

The lawyers will now make their closing arguments. What they say is not evidence and you are not bound [by] how they interpret or remember the evidence. The only evidence which you must consider in deliberations comes from the witness' testimony and from the exhibits which are in evidence.

During the prosecutor's closing argument, he asserted that Carter was not a credible witness because he was "diving on the sword for his older brother. He's trying to take responsibility."

During the prosecution's rebuttal argument, the prosecutor made the following comments:

[Deputy Prosecuting Attorney ("DPA") ]: Now, let's look at the defense that the defendant is trying to throw at you. At first glance it seems like Brandon's testimony seems very honorable. It seems like the honorable thing to do. He's basically diving on the sword for his brother, saying it was me. I'm responsible. I'm the one that threw the beer bottle. But in reality it's really not that honorable a thing to do. But actually what it is a desperate attempt to get his brother off of these charges.

Now, a person might wonder, why is that? Because a person might think, well, he's admitting to a crime, so he must be telling the truth. But is he really? Because you think about it, the only person on trial today is this defendant, Lopeti Tuua. Brandon Carter is not on trial. He can admit to anything and he won't be convicted.

*Now, some of you may be—or a person might think, well, he admitted under oath that he threw the bottle. So if we find Lopeti not guilty, you can go after the brother.*

State v. Tuua, No. 29125 at 5, 2010 WL 1765997 (App. Apr. 29, 2010) (mem.) (emphasis added).

Defense counsel objected, and the circuit court overruled the objection. The prosecutor continued:

[DPA]: *Going back to the strategy of the defense, if you found the defendant not guilty, a person might think, well, you can go after Brandon Carter because he admitted to it.*

*Think about it. What would the defense attorney of Brandon Carter do? He'd call every one of the State witnesses. He'd call Dave Brown. He'd call Renie Hamaleyian [sic] and he'd call Jason Inglish. Who threw the bottle? Each of them would say it's Lopeti. Each one of them.*

*Brandon Carter could get up on the stand and all he'd have to say is, I lied. And then what would happen? Lopeti would have been found not guilty. Defendant would have been found not guilty. Could have just said, I lied under oath. So what?*

*The most that you can get him for would be charging him for lying under oath. That would be it and that's the strategy, and that's why you can't really give any credibility to Brandon Carter coming in here today and saying, hey, it was me. I threw the bottle. I kind of threw it sideways, and it kind of glanced off Dave's head and hit the wall and smashed.*

Come on, ladies and gentlemen, it's not credible. It's not believable. What it is a desperate attempt to get his brother off. That's all it is.

The bottom line in this case, ladies and gentlemen, is that the right person who threw the beer bottle on March 13th, 2007 is in this courtroom and he's sitting right here. This is the right person. Don't let [Carter] and [Tuua]'s scheme confuse you or cause you to speculate about any other possibilities, because it was this defendant who threw the beer bottle.

(Emphasis added.)

Tuua was subsequently found guilty and convicted of Assault in the Second Degree in violation of HRS § 707–711(1)(d) (Supp. 2006). Tuua was sentenced to imprisonment for 90 days and a five year term of probation.

### B. The Intermediate Court of Appeals' April 29, 2010 Memorandum Opinion

Tuua appealed to the Intermediate Court of Appeals (ICA) raising three points of error: "(1) prior counsel's failure to timely file a notice of appeal constituted ineffective assistance of counsel, (2) the deputy prosecuting attorney (DPA) committed prosecutorial misconduct during rebuttal argument, and (3) instructions regarding lesser included of-

fenses should have been given *sua sponte*." *Tuua,* mem. op. at 2.

With respect to the second point of error, the ICA held that the prosecuting attorney's comments were not improper. *Id.* at 8. The ICA held that, when taken "as a whole, the DPA's argument was not an invitation to consider matters outside the record, nor did it state or imply that the DPA had special knowledge that the jury should rely upon." *Id.* The ICA did "not see this argument as an attempt to inflame the jury. . . ." *Id.*

Tuua also asserted that "the DPA's argument suggested that Carter was lying and that Carter's testimony was procured by Tuua." *Id.* The ICA held that the "the prosecution is entitled to argue that a witness is lying if the argument is based on the possible motivations of the witness and not the personal opinion of the prosecutor." *Id.* (citing *State v. Cordeiro,* 99 Hawai'i 390, 425, 56 P.3d 692, 727 (2002); *State v. Fauci,* 282 Conn. 23, 917 A.2d 978, 988 (2007)). The ICA observed that "[t]here was no statement of the DPA's personal opinion and the DPA's argument was directed towards the possible motivation behind Carter's testimony, whether his testimony was altruistic or actually without consequences." *Id.*

With respect to Tuua's argument regarding the impermissible suggestion of collusion, the ICA held that the "DPA's argument that Tuua and Carter had concocted a false story was based on a fair inference from the evidence" because "the testimony of Tuua and Carter conflicted with that of the State's witnesses who identified Tuua as the person who threw the bottle at Brown." *Id.* at 9.

The ICA affirmed the circuit court's January 11, 2008, judgment. *Id.* at 10.

On September 29, 2010, this court accepted a timely application for a writ of certiorari filed by petitioner-defendant-appellant Tuua, requesting that this court review the ICA's May 20, 2010 judgment on appeal entered pursuant to its April 29, 2010 Memorandum Opinion affirming the circuit court's January 11, 2008 Judgment of Conviction and Sentence. Oral argument was held on November 4, 2010.

## II. STANDARDS OF REVIEW

### A. Application For Writ Of Certiorari

 The acceptance or rejection of an application for writ of certiorari is discretionary. HRS § 602–59(a) (Supp.2009). "In deciding whether to accept an application, this court reviews the decisions of the ICA for (1) grave errors of law or of fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decisions and whether the magnitude of such errors or inconsistencies dictate the need for further appeal." *State v. Wheeler,* 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (citing HRS § 602–59(b)).

### B. Prosecutorial Misconduct

 "Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of 'whether there is a reasonable possibility that the error complained of might have contributed to the conviction.'" *State v. Rogan,* 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (block quote formatting omitted) (quoting *State v. Sawyer,* 88 Hawai'i 325, 329 n. 6, 966 P.2d 637, 641 n. 6 (1998)). "Factors to consider are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." *Id.*

## III. DISCUSSION

### A. The Deputy Prosecuting Attorney's Comments Were Improper.

 Tuua asserts that the prosecutor's comments constituted prosecutorial misconduct because: 1) the prosecutor suggested that Tuua procured Carter's dishonesty without evidence in the record to support that inference; 2) the deputy prosecuting attorney made a "personal comment" and suggested his opinion; 3) the prosecutor's comments inflamed "the passions and prejudice" of the jury; and 4) the prosecutor's suggestion that no one will be prosecuted for the crime was improper. We hold that the prosecutor's comments were improper because the prosecutor commented on the consequences of the jury's verdict and matters not

**14**

in evidence.[2]

■ This court evaluates claims of improper statements by prosecutors by first determining whether the statements are improper, and then determining whether the misconduct is harmless. *State v. Kiakona,* 110 Hawai'i 450, 458, 134 P.3d 616, 624 (App. 2006) (citing *State v. McGriff,* 76 Hawai'i 148, 160, 871 P.2d 782, 794 (1994); *State v. Lincoln,* 3 Haw.App. 107, 125, 643 P.2d 807, 820 (1982)). During closing argument, a prosecutor "is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence." *State v. Clark,* 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996) (citing *State v. Apilando,* 79 Hawai'i 128, 141, 900 P.2d 135, 148 (1995)). "Although a prosecutor has wide latitude in commenting on the evidence during closing argument, it is not enough that a[sic] his comments are based on testimony 'in evidence'; his comments must also be 'legitimate.'" *State v. Mainaaupo,* 117 Hawai'i 235, 253, 178 P.3d 1, 19 (2008) (quoting *Clark,* 83 Hawai'i at 304, 926 P.2d at 209). "A prosecutor's. comments are legitimate when they draw 'reasonable' inferences from the evidence." *Id.* at 253–54, 178 P.3d at 19–20 (quoting *State v. Iuli,* 101 Hawai'i 196, 208, 65 P.3d 143, 155 (2003)). Finally, it is "generally recognized under Hawai'i case law that prosecutors are bound to refrain from expressing *their personal views* as to a defendant's guilt or the credibility of witnesses." *State v. Cordeiro,* 99 Hawai'i 390, 424–25, 56 P.3d 692, 726–27 (2002) (block quote formatting omitted) (quoting *Clark,* 83 Hawai'i at 304, 926 P.2d at 209).

Under the foregoing standard, the prosecutor's comments were improper because the prosecutor commented on matters outside the evidence adduced at trial. As noted above, prosecutors are entitled to draw reasonable inferences from the evidence. *Mainaaupo,* 117 Hawai'i at 253–54, 178 P.3d at 19–20; *State v. Carvalho,* 106 Hawai'i 13, 18, 100 P.3d 607, 612 (App.2004) (block quote formatting omitted) (quoting *Clark,* 83 Hawai'i at 304–05, 926 P.2d at 209–10). In this

case, the prosecutor went beyond the record and discussed the consequences of the jury's verdict. For instance, the prosecutor commented that, in Carter's hypothetical future trial, every one of the prosecution's witnesses in Tuua's trial would testify that Tuua threw the bottle. Drawing on this hypothetical, the prosecutor argued that believing Carter would result in the acquittal of both Tuua and Carter on the assault charge. The prosecutor stated that the "most that you can get [Carter] for would be charging him for lying under oath. That would be it and that's the strategy, and that's why you can't really give any credibility to Brandon Carter coming in here today and saying, hey, it was me." The prosecutor's comments did not draw legitimate inferences from the testimony adduced at trial and were therefore improper.

In *State v. Sanchez,* the ICA confronted a similar comment and held that the prosecutor's statement was improper. 82 Hawai'i 517, 533, 923 P.2d 934, 950 (App.1996). The prosecutor stated to the jury:

> Do not, do not reward their lies with an acquittal. Please do not. That's what you're doing. *You know what happens after that, then the group gets together again and they say, boy, it worked. We sure fooled that jury didn't we? No, they didn't. . . .*

*Id.* at 532 n. 20, 923 P.2d at 949 n. 20 (emphasis added).

The ICA held that the prosecutor's comment was improper because it "improperly 'direct[ed] the jury from its duty to decide the case on the evidence ... *by making predictions of the consequences of the jury's verdict.*'" *Id.* at 533, 923 P.2d at 950 (emphasis added) (quoting 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8(d) (2d ed.1986)). The ICA held that by branding the jury members as "fools" the argument undermined "the proposition that the prosecutor should refrain from argument diverting the jury from concentrating on the evidence." *Id.*

---

2. Because we reach this conclusion, it is not necessary to address Tuua's remaining claims of impropriety.

Although the statement in *Sanchez* differs from the statement in this case, the reasoning in *Sanchez* applies. In the instant case, the prosecutor framed his argument by referring to the consequences of failing to convict Tuua.

Before the ICA, the prosecution asserted that "the prosecutor's rebuttal comments on the strategy behind Carter's testimony were part of the overall closing argument evaluating the credibility of the witnesses . . . ." The prosecution characterized the deputy prosecuting attorney's argument as continuing to "theorize" why Carter would take the blame for the incident. The prosecution analogized Hawai'i cases holding that a prosecutor may argue the credibility of witnesses. (Citing *Carvalho*, 106 Hawai'i at 17, 100 P.3d at 611 (holding that prosecutor's statement that "either you can believe Richard Melcher about what happened or you can believe Melanie Yuson and [the defendant]" was not improper.)) [3]

This argument is unpersuasive because a plain reading of the prosecutor's rebuttal indicates that he went beyond attacking Carter's credibility based on the evidence adduced at trial. The prosecution correctly observes that the deputy prosecuting attorney argued a legitimate inference from the evidence that Carter was "diving on the sword" for his brother Tuua and could not be prosecuted in the instant case. However, the prosecuting attorney went beyond inferring that Carter was not credible from evidence in the record by focusing on whether Carter could be prosecuted in a subsequent proceeding. For instance, the deputy prosecuting

attorney explained his comments during a bench conference as:

It's a strategy on [sic] the defense that they're going to basically, if they find [Tuua] not guilty, you know, *a person might think you could go after [Carter], but then, of course, all the State witnesses could be used by the defense to say, well, hell, it was [Tuua] that threw the bottle.*

(Emphasis added.)

Viewed in this light, the prosecuting attorney's comments about Carter's potential trial and that the "most you can get [Carter] for would be charging him for lying under oath" were not based on the evidence in the record. Although the prosecutor couched his argument as an attack on Carter's credibility, the prosecutor's argument discussed the consequences of the jury's verdict. Therefore, the prosecutor's comment was improper.

## B. The Improper Comment Was Not Harmless.

■ Tuua asserts that the deputy prosecuting attorney's improper statement was not harmless beyond a reasonable doubt. Before the ICA, the prosecution did not specifically argue that the prosecutor's error was harmless, but "noted that . . . the trial court sufficiently instructed the jury that closing argument was not evidence." To the extent that the prosecution has preserved and is arguing harmless error, this argument is unpersuasive.

■ Hawai'i courts evaluate the following criteria in assessing whether a prosecutor's improper comments are harmless: "(1) the

**3.** Before the ICA, the prosecution also asserted that *State v. Valdivia*, 95 Hawai'i 465, 484, 24 P.3d 661, 680 (2001), supports concluding that the prosecutor's comment was not improper. In *Valdivia*, the prosecutor made the following statement:

*Ladies and gentlemen, these charges are not trumped up because officers are lying or that this is some blue wall of conduct, that they're trying to get even for what this guy did to some of their officers.* Remember, the person he almost killed was the person that was in that green car. Maybe he should have been charged with attempted murder.

*Id.* at 483, 24 P.3d at 679 (emphasis added).

The ICA held that the prosecutor's comment that "that Valdivia should have been charged

with attempted murder" was "flagrantly improper." *Id.* With respect to the "blue wall of conduct" comment, the ICA held that "it was not an improper assertion of personal opinion regarding Valdivia's credibility." *Id.* at 484, 24 P.3d at 680 (citing *Clark*, 83 Hawai'i at 304–06, 926 P.2d at 209–11). The statement in *Valdivia* differs from the statement in this case. Additionally, the portion of *Valdivia* that the prosecution cites to concerns whether a statement expresses the prosecutor's personal opinion. (Citing *Valdivia*, 95 Hawai'i at 484, 24 P.3d at 680.) In light of our conclusion that the prosecutor's comment improperly discusses matters not in evidence, *Valdivia* is not persuasive.

nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." *Mainaaupo*, 117 Hawai'i at 252, 178 P.3d at 18 (internal quotation marks omitted) (quoting *State v. Hauge*, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003)). An improper comment warrants a new trial if "there is a reasonable possibility that the error complained of might have contributed to the conviction." *See Hauge*, 103 Hawai'i at 47, 79 P.3d at 140 (internal quotation marks and block quote formatting omitted) (quoting *State v. Pacheco*, 96 Hawai'i 83, 93, 26 P.3d 572, 582 (2001)).

### 1. *Nature of the conduct*

As discussed above, the first factor weighs against concluding that the deputy prosecuting attorney's comment was harmless because the prosecutor commented on the consequences of the jury's verdict and matters not in evidence. This court evaluates the severity of the conduct in determining whether the first factor favors holding that an improper statement was harmless. *See State v. Maluia*, 107 Hawai'i 20, 27, 108 P.3d 974, 981 (2005). For instance, in *Maluia*, this court held that a prosecutor's question asking the witness to comment on the veracity of other witnesses was harmless. *Id.* This court held that:

the conduct was less egregious than that presented in those cases where we vacated the defendants' convictions and remanded for new trials. *See, e.g., State v. Wakisaka*, 102 Hawai'i 504, 78 P.3d 317 (2003) (vacating and remanding where the prosecution improperly commented on the defendant's failure to testify); *State v. Pacheco*, 96 Hawai'i 83, 95, 26 P.3d 572, 584 (2001) (vacating and remanding where "the [prosecution's] characterization of [the defendant] as an 'asshole' strongly conveyed his personal opinion and could only have been calculated to inflame the passions of the jurors and to divert them, by injecting an issue wholly unrelated to [the defendant's] guilt or innocence into their deliberations, from their duty to decide the case on the evidence"); *State v. Marsh*, 68 Haw. 659, 728 P.2d 1301 (1986) (vacating and remanding where the prosecutor, in clos-

ing, repeatedly stated her personal belief that the defendant was guilty).

*Id.*

Although *Maluia* suggests that the prosecutor's comment in the instant case was not as egregious as some of the other conduct this court has held non-prejudicial, the prosecuting attorney's conduct here was more egregious than the question posed by the prosecutor in *Maluia*. The comment directed the jury's attention away from the evidence and to impermissible considerations of the consequences of its verdict. Therefore, the first factor weighs in favor of holding that the error was not harmless.

### 2. *Promptness of a curative instruction*

The circuit court did not issue a curative instruction. Although the circuit court twice instructed the jury that arguments of counsel were not evidence, it overruled Tuua's objection and did not issue a curative instruction after the improper statement. *See Mainaaupo*, 117 Hawai'i at 255, 178 P.3d at 21 (holding that the circuit court's failure to issue a curative instruction regarding the prosecutor's comment weighed in favor of concluding that the comment was not harmless); *State v. Rogan*, 91 Hawai'i 405, 415, 984 P.2d 1231, 1241 (1999) ("[I]t is unlikely that the circuit court's general instructions that were delivered well after the inflammatory comments along with the other general jury instructions could have negated the prejudicial effect of the deputy prosecutor's comments.") (citing *State v. Marsh*, 68 Haw. 659, 661, 728 P.2d 1301, 1303 (1986)); *Marsh*, 68 Haw. at 661, 728 P.2d at 1303 (holding that a prosecutor's comments were not harmless in part because "the court was not requested to and did not issue a specific instruction concerning the prosecutor's closing comments").

Before the ICA, the prosecution asserted that *State v. Carvalho* indicates that the trial court "sufficiently instructed the jury that closing argument was not evidence." (Citing *State v. Carvalho*, 106 Hawai'i 13, 18, 100 P.3d 607, 612 (App.2004.)) In *Carvalho*, the trial court instructed the jury twice that arguments and statements of counsel are not

evidence. *Carvalho*, 106 Hawai'i at 19, 100 P.3d at 613. The prosecution observes that in *Carvalho*, the ICA presumed the jury followed the court's instructions and stated that if "prophylactic was necessary in this case, surely these instructions provided some good measure of inoculation." *Id.* (citing *State v. Meyer*, 99 Hawai'i 168, 172–73, 53 P.3d 307, 311–12 (2002)). Although the defendant claimed that the prosecutor's comments distorted its burden of proof, the ICA stated that "the jury . . . was well instructed on 'what [it] must find in order to reach a certain verdict.'" *Id.* at 18, 100 P.3d at 612 (quoting *United States v. Vargas*, 583 F.2d 380, 386 (7th Cir.1978)). *Carvalho* is distinguishable because jury instructions regarding the prosecution's burden of proof were given in addition to instructions informing the jury that arguments are not evidence. *Id.* at 18–19, 100 P.3d at 612–13. Additionally, the prosecution has not pointed to Hawai'i case law suggesting that a court's generic instructions that arguments of counsel are not evidence, issued prior to improper statements, can cure misconduct in close cases involving the credibility of witnesses. *See infra* at 280; *Marsh*, 68 Haw. at 661, 728 P.2d at 1302–03. Therefore, the circuit court's failure to give a curative instruction weighs against holding that the prosecutor's comment was harmless.

### 3. The strength or weakness of the evidence

In close cases involving the credibility of witnesses, particularly where there are no disinterested witnesses or other corroborating evidence, this court has been reluctant to hold improper statements harmless. *Compare Maluia*, 107 Hawai'i at 27, 108 P.3d at 981 (noting that "the prosecutorial misconduct in the instant case was harmless beyond a reasonable doubt" where "[t]he evidence against the defendant included two eyewitness accounts from witnesses unconnected to the defendant or the victim [and] also showed that the defendant's BAC was 0.131, raising additional doubts as to the defendant's credibility"), *with Rogan*, 91 Hawai'i at 415, 984 P.2d at 1241 (holding that the evidence did not outweigh the inflammatory effect of the prosecutor's comments, where the case "turned on the credibility of two witnesses" and "[t]here were no independent eyewitnesses or conclusive forensic evidence").

In this case, the credibility of the witnesses was pivotal. The critical issue at trial was who threw the bottle and there was conflicting testimony in this regard. Because this was a case involving the credibility of witnesses, each of whom arguably had a potential interest or bias, it weighs against holding that the improper statement was harmless.

An evaluation of the three factors reveals that there is a reasonable possibility that the prosecutor's improper comment might have affected the conviction because: 1) the prosecutor's improper comment discussed the consequences of the jury's verdict and matters not in evidence; 2) the trial court did not issue a curative instruction; and 3) the strength of the evidence was not overwhelming and the credibility of the witnesses' versions of events was the pivotal issue at trial.

## IV. CONCLUSION

Based upon the foregoing analysis, we vacate the ICA's judgment on appeal, and remand to the circuit court for a new trial.