NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000468**
**29-MAY-2020**
**08:01 AM**

NO. CAAP-18-0000468

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DONALD P. MCFEE, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2CPC-17-0000346(1))


SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Chan and Wadsworth, JJ.)

Defendant-Appellant Donald P. McFee (**McFee**) appeals from the May 23, 2018 Judgment of Conviction and Sentence entered by the Circuit Court of the Second Circuit (**Circuit Court**),[1] following a jury trial wherein McFee was found guilty of the charge of Terroristic Threatening in the First Degree (**TT1**), in violation of Hawaii Revised Statutes (**HRS**) § 707-716 (2014).[2]

---

[1]  The Honorable Rhonda I.L. Loo presided.

[2]  § 707-716 provides, in relevant part,

(1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

. . . .

(e) With the use of a dangerous instrument[.]

On appeal, McFee contends that the Circuit Court erred and abused its discretion in denying McFee's motion for mistrial based on prosecutorial misconduct, failing to give appropriate curative instructions, and failing to strike impermissible introduction of prior bad acts.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve McFee's points of error, and affirm.

On appeal, we "evaluate[] claims of improper statements by prosecutors by first determining whether the statements are improper, and then determining whether the misconduct is harmless."  State v. Tuua, 125 Hawaiʻi 10, 14, 250 P.3d 273, 277 (2011) (citations omitted).  If a prosecutor makes improper statements, we consider "the following criteria in assessing whether a prosecutor's improper comments are harmless: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant."  Id. at 15-16, 250 P.3d at 278-79 (internal quotation marks omitted).  The harmless beyond a reasonable doubt standard "requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction."  State v. Rogan, 91 Hawaiʻi 405, 412, 984 P.2d 1231, 1238 (1999) (internal quotation marks and citations omitted).

Here, the Deputy Prosecuting Attorney (**DPA**) improperly made a comment about a tattoo on McFee's chest during opening statements, which constituted prosecutorial misconduct.  However, based on the record in this case which includes a timely curative instruction striking the DPA's improper comment and the strong evidence against McFee, we conclude the DPA's improper statement was harmless.

An Indictment filed on May 23, 2017, charged McFee with TT1 as follows:

> That on or about the 15th day of May, 2017, . . .
> [McFee], with the intent to terrorize, or in reckless
> disregard of the risk of terrorizing Deborah Waltrip
> (**Waltrip**), did threaten, by conduct, to cause bodily
> injury to Deborah Waltrip, with the use of a dangerous
> instrument, to wit, a large hunting knife[.]

Prior to jury trial, the Circuit Court heard the State and McFee's motions in limine. McFee sought specific exclusion of, *inter alia*, "[a]ny evidence relating to tatoos [sic] on the Defendant's body[.]"  No party objected to the other's in limine requests and the court granted both parties' motions.

On January 9, 2018, the first day of trial, the State began its opening statement as follows:

> This case is about a former tenant and a knife.
> On May 15th, 2017, Deborah Waltrip was watching
> television at her house. . . .  She was watching
> television with her other tenant, Brandon Telles.
>
> About 7:30 p.m., Deborah heard some loud yelling
> and screaming near the front part of her residence.
> She lives on the second floor so she had to come down
> the stairs.  She wanted to check to see what was going
> on, who was doing the yelling and why was that person
> yelling.
>
> So she approaches the front part of her house.
> There's a gate there -- her entire house or property
> is fenced in, and you'll see photographs of the fence.
> It's just a wire fence but there's a big gate -- and
> as she approaches the gate, she hears this person
> yelling.  She hears this person screaming.  She can't
> quite make out who it is until she gets a little bit
> closer.  As soon as she gets closer, she sees that
> it's her former tenant Donald McFee, the defendant
> right here.
>
> She recognizes him and she also sees distinctive
> tattoos on the front of his chest. **She recognizes the
> tattoo.  It says, "Fuck the police" right on his
> chest, so she knows it's Donald McFee.**
>
> Now, **a few months earlier, Deborah had to tell
> Donald to please leave the residence because he was
> doing some damage to a room that he was renting in her
> house so she asked him to leave, and that happened in
> March of 2017, so about two months earlier.**
>
> She sees the defendant.  She tells him, you're
> not welcome here.  Leave.  You are not welcome.
> Defendant has a knife on his waist.

(Emphases added.)

McFee requested a bench conference and moved for a mistrial due to the DPA mentioning McFee's tattoo:

> [Counsel for McFee]:  According to the motion in limine is to -- I thought I had a motion in limine precluding the State from mentioning any tattoos.
>
> [DPA]:  I don't remember that, Judge, because he brought up the tattoos on his voir dire.
>
> [Counsel for McFee]:  Yeah, but that's not coming into evidence.  My statements are not in evidence.
>
> THE COURT:  Any evidence related to tattoos on the defendant's body.
>
> [Counsel for McFee]:  I move for a mistrial.
>
> [DPA]:  I don't remember seeing that, Judge.
>
> THE COURT:  I'll ask the jury to disregard and have that comment stricken.
>
> [Counsel for McFee]:  I submit that they cannot disregard, "Fuck the police."  That's the -- that is in --
>
> THE COURT:  I'll tell the jury to disregard and have the matter stricken from the record.

Immediately thereafter, the Circuit Court instructed the jury to "disregard the remark made by [the DPA] regarding the tattoos on the defendant's chest and the wording.  It will be so stricken from the record."

Later, during the evidentiary portion of trial, McFee revisited his motion for mistrial, emphasizing, for the record, that he was prejudiced at the outset when the DPA mentioned the "Fuck the police" tattoo in the opening statement, while in voir dire McFee did his best to be vague about the nature of McFee's tattoos, which also covered his face and neck.  In addition, McFee asserted that the trial court's curative instruction was insufficient to remove the prejudice caused by the DPA's misconduct.

Regarding the first factor in assessing whether the DPA's misconduct was harmless, it was clearly improper for the DPA to comment on McFee's "Fuck the police" tattoo during his opening statement in light of the Circuit Court's ruling to preclude any evidence regarding McFee's tattoos.  Even though

4

McFee's counsel had mentioned tattoos in voir dire, those comments related to McFee's visible tattoos on his face. We do note that the prosecutor's comment was an isolated statement in the State's opening argument; it was not presented as evidence, and the jury was instructed that "[s]tatements or arguments made by lawyers are not evidence." The jury was also instructed they are not "to decide whether Mr. McFee is a good person or a bad person[,]" and this case does not involve conduct by McFee against a police officer. However, opening statement "provides an opportunity for counsel to advise and outline for the jury the facts and questions in the matter before them." State v. Simpson, 64 Haw. 363, 369, 641 P.2d 320, 324 (1982). The DPA should not have made comment on McFee's chest tattoo given that no evidence about the tattoo would be admissible and given the content of the tattoo. Thus, the first factor -- the nature of the alleged prosecutorial misconduct -- weighs in favor of McFee.

As to the second factor, after McFee's objection during the bench conference, the Circuit Court promptly gave an instruction to the jury to "disregard the remark made by [the DPA] regarding the tattoos on the defendant's chest and the wording" and ordered the remark to be stricken. No further reference to the particular tattoo or any others was made. The court's immediate instruction dissipated the risk of prejudice to McFee because a jury is presumed to follow the instructions it is given by the court. State v. Acker, 133 Hawaiʻi 253, 278, 327 P.3d 931, 956 (2014) (citing State v. Knight, 80 Hawaiʻi 318, 327, 909 P.2d 1133, 1142 (1996) ("[A]s a rule, juries are presumed to . . . follow all of the trial court's instructions.")). Accordingly, the second factor, the promptness or lack of a curative instruction, weighs against McFee.

Regarding the third factor, the evidence elicited at trial strongly supported the jury's guilty verdict on the charge of TT1. Waltrip testified she was McFee's former landlord and

had given McFee forty-five days' notice in March 2017 to leave her property.  On the night in question, Waltrip went downstairs in her residence to investigate a commotion outside and noticed a person crouched between a trailer and Waltrip's SUV near the gate of a hog-wire fence that surrounded her property.  When Waltrip recognized that the person was McFee, she became fearful and repeatedly asked him to leave.  McFee yelled and swore at Waltrip from the other side of the fence.  Waltrip then made a non-emergency call to the police.  Initially, she did not see McFee carrying a weapon but later, from about three feet away as Waltrip was on the phone with the police, McFee brandished a large knife for about five seconds, yelling and swearing in a loud and threatening tone, causing Waltrip to feel threatened. He then put the knife back into the holder in his belt and walked down the street towards the garage.  McFee then walked back towards Waltrip by her gate and waived the knife in a threatening manner at her from two to three feet away for about ten to fifteen seconds.  During this time, McFee was yelling profanities in a threatening tone at Waltrip.  Waltrip was about a foot behind her gate but backed up because she was scared.  Waltrip was terrified.  All the while, Waltrip repeatedly stated, "You need to leave now."  The police finally arrived and arrested McFee.

Walter Gouveia (**Gouveia**), a tenant who resides in the garage on Waltrip's property, testified that earlier on the day of the incident, he had run into McFee at the laundromat, and McFee had asked Gouveia if McFee could stop by.  Gouveia advised McFee he was not allowed to visit the property.  About twenty-five minutes after Gouveia returned home, McFee came to Gouveia's residence and Gouveia again reminded McFee that he did not belong there, after which McFee walked away towards Waltrip's residence.  Gouveia followed McFee and saw him brandish a knife about one foot in front of Waltrip in a sideways slashing type

motion, while chanting "in Hawaiian all kinds of different stuff."  McFee stopped waving the knife when the police arrived.

Maui Police Officer Cody Saludez (**Officer Saludez**) testified that he responded to a disorderly type case at Waltrip's property.  When he arrived, he observed McFee standing alongside the roadway, with a large hunting knife at his left hip.  Officer Saludez recovered the knife from McFee as evidence and measured the knife blade to be eight inches long and the handle about four to five inches long.

McFee did not testify and did not call any witnesses in his defense.

Given the record, the third factor, the strength or weakness of the evidence against defendant, weighs strongly against McFee.  After evaluating the three factors as to whether the DPA's tattoo comment was harmless, and considering the record as a whole, we conclude there is no reasonable possibility that the error complained of might have contributed to McFee's conviction.

As for McFee's argument that the Circuit Court failed to strike impermissible introduction of prior bad acts, McFee's point of error and arguments are less than clear as to the prior bad acts he alleges were improperly raised.  We infer that McFee is referencing the DPA's comments in his opening statement that, prior to the incident in this case, Waltrip had asked McFee to leave her residence because he "was doing some damage to a room that he was renting in her house."  McFee made no objection to this comment at trial.  In an analogous circumstance, the Hawai'i Supreme Court noted that "[w]here a defendant fails to object to a prosecutor's statement during closing argument, appellate review is limited to a determination of whether the prosecutor's alleged misconduct amounted to plain error." State v. Iuli, 101 Hawai'i 196, 204, 65 P.3d 143, 151 (2003).

> The appellate court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.  An appellate court's

> power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

State v. Metcalfe, 129 Hawaiʻi 206, 222, 297 P.3d 1062, 1078 (2013) (quotation marks and citations omitted).  Given the circumstances in this case, we conclude there was no plain error.

Therefore, IT IS HEREBY ORDERED that the Circuit Court of the Second Circuit's May 23, 2018 Judgment of Conviction and Sentence is affirmed.

DATED:  Honolulu, Hawaiʻi, May 29, 2020.


On the briefs:                      /s/ Lisa M. Ginoza
                                    Chief Judge
John F. Parker,
for Defendant-Appellant.            /s/ Derrick H.M. Chan
                                    Associate Judge
Peter A. Hanao,
Deputy Prosecuting Attorney         /s/ Clyde J. Wadsworth
for Plaintiff-Appellee.             Associate Judge